67 P.(2d) 1000

## WOOD GARAGE v. JASPER.

### No. 4184.

Supreme Court of New Mexico.

April 19, 1937.

G. L. Reese, Sr., of Roswell, for appellant.

J. C. Compton, of Portales, for appellee.

BICKLEY, Justice.

The Wood Garage sued the husband of appellant in the justice of the peace court on a promissory note executed August 10, 1929, by defendant W. H. Jasper and his father H. D. Jasper, and garnisheed a bank which held $160 on deposit in the name of the defendant, as appears by the answer of the garnishee. No defense was made to the action on the note. The appellant, Frankie Jasper, intervened and claimed that the money on deposit was her property and was not the money or property of the defendant. The justice of the peace rendered judgment for plaintiff on the note and adjudged that the garnishment be quashed.

The transcript on appeal to the district court shows a subject-matter within the jurisdiction of the justice court, and appellant, by its appeal, vouched for the jurisdiction of the justice of the peace and the district court. There is no claim that the jurisdiction of the justice court had ever been divested prior to the appeal.

The only contested matter in the district court involved the ownership of the money in the hands of the garnishee. It was a jury trial. The Jaspers offered testimony that the money belonged to appellant, intervener, and explained that it was rent money from an oil lease on land owned by the appellant, and supported such ownership by a deed from her husband to her, executed June 27, 1928, and recorded July 7, 1928, which was received in evidence without objection. Plaintiff then, for the first time, so far as appears from the record, sought to assail by cross-examination and tender of proof the bona fides of the deed. The nature of the evidence tendered by appellee for the purpose of destroying the weight of the deed to intervener in support of her claim of ownership of the fund tendered, if believed, to support the inference that the conveyance had been made and accepted for the purpose of defrauding the creditors of the grantor existing at the date of the conveyance; but since the deed was executed and recorded more than a year prior to incurring of indebtedness to plaintiff and about five years before this suit was commenced, it does not appear that any evidence was offered which would discharge the heavy burden upon one who seeks to set aside a conveyance as being fraudulent as against subsequent creditors, since the tendered evidence may not show actual fraud, and is silent as to reliance of plaintiff upon his belief of defendant's ownership of the land at the time credit was extended, and the tendered evidence smacks of the nature of a stale claim viewed from the standpoint of laches or limitations. However, this is unimportant except as suggestive upon another trial.

Intervener objected to the evidence tendered by appellee on the ground that plaintiff could not assail her title in this proceeding because the court did not have power under the circumstances to adjudicate the title and set the deed aside, because such relief was not within the issues. Plaintiff conceded that the deed could not be set aside in this action, but contended that since

intervener's claim of ownership of the fund was necessarily based upon her ownership of the land, her cause would fail if the court found that she did not own it. Intervener, with unfortunate persistence, objected to the court's considering the evidence offered by plaintiff to defeat her claim of ownership of the land. The court agreed with intervener and quoted section 79-206, N.M.Stats. 1929 Comp., as follows: *"Title to lands in question—Procedure.* If it appear on the trial of any cause from the evidence, that the title to lands is in question, the justice shall immediately make an entry thereof on his docket and cease all further proceedings."

The district court decided that on an appeal from a justice court it was bound by the same limitations and procedure applicable to such inferior courts. As to this we find it unnecessary to decide. However, the trial court did not follow through with this idea consistently. If, as he decided, he was sitting for a trial of the cause with no more power than the justice of the peace would have had if confronted with the same situation and was subject to the control of the statute quoted and was correct in his view that the justice court would have been ousted of jurisdiction in a like situation, then it was the district court's duty to make an entry on his docket "and cease all further proceedings." The trial judge did not do this, but instead rendered judgment in favor of the plaintiff and against the garnishee, which amounted to an adjudication that the money belonged to the defendant and not to the intervener, resting his decision solely on the fact that the money was deposited in the bank in defendant's account therein. Manifestly, if it appeared from the evidence "that the title to lands is in question," even though incidentally, this was so because the issue of the ownership of the money could not be decided without deciding who owned the land. The result of the ruling was to deprive the intervener of her day in court to assert her ownership of the fund. The trial court adopted the view that the intervention was a proceeding separate and distinct from the garnishment, although intervener had filed a petition in intervention and had also filed a "denial of the answer of garnishee," which stated that officers of the garnishee bank knew at the time they filed its answer that the sum of $160 deposited in said bank, and referred to in paragraph 1 of the answer of said garnishee, was the sole, separate, and individual property of the intervener, and that the defendant W. H. Jasper at no time since that deposit was made had any right, title, or interest in or to said deposit or credit in said bank. We cannot regard the intervention as a distinct and separate proceeding unrelated to the garnishment proceeding, but, even if it were, the district court was wrong in saying that intervener had interjected a dispute as to the title to real estate or that it was drawn in question by her, merely because she offered in evidence a deed to the land as evidence of her ownership of the money in question. If any one interjected a dispute as to title to land it was appellee.

The just trial judge realized the misfortune thus visited upon the intervener and announced that he would delay rendering judgment for a time sufficient for her to go into the district court.in an original proceeding to assert her right to the money,'which court would not be trammeled in deciding the issue even though the title to lands might be drawn in question.

If it was the district court's duty to cease all further proceedings because of lack of jurisdiction, of course he could not properly render judgment on the merits of the issue. So even if the view of the court as to limitations upon his power were correct, we would be required to dispose of the case by remanding it with directions to go back to the point where the error was committed and "cease all further proceedings." This would require the dismissal of the garnishment proceedings.

It is suggested that in a case where the transcript discloses to the district court that the justice court had jurisdiction of the subject-matter, namely, a civil action in which the debt or sum claimed is not in excess of $200, and there arises for the first time in the district court on appeal and the trial de novo "a matter in which the title to real estate or the boundaries of land may be in dispute or drawn in question," the district court could exercise its own jurisdiction to try such question as though the case had been commenced in the district court untrammeled by the limitations upon the jurisdiction of the justice of the peace, and it is contended that Sheley v. Shafer, 35 N.M.

358, 298 P. 942; Pointer v. Lewis, 25 N. M. 260, 181 P. 428; Romero v. Luna, 6 N. M. 440, 30 P. 855; Vinquist v. Siegert, 58 N.D. 295, 225 N.W. 806; Douglass v. Easter, 32 Kan. 496, 4 P. 1034; Lyman v. Stanton, 39 Kan. 443, 18 P. 513; Hart v. Carnall-Hopkins Co., 103 Cal. 132, 37 P. 196, and DeJarnatt v. Marquez, 132 Cal. 700, 64 P. 1090, support this view. As to this we find it unnecessary to decide, in view of·our opinion that even had the district court been subject to the limitations imposed upon the powers of the justice of the peace, then its jurisdiction would not have been ousted upon the record before us, because the case was not a matter in which the title to real estate was in dispute or drawn in question.

Our Constitution, art. 6, § 26, provides: "* * * justices * * * shall not have jurisdiction in any matter in which the title to real estate or the boundaries of land may be in dispute or drawn in question." This is not a grant of jurisdiction, but is a limitation thereon. Seeking the grant of jurisdiction to justices of the peace, we find that section 1 of article 6 of the Constitution says that the judicial power of the state shall be vested in certain enumerated tribunals and courts, including justices of the peace. This, however, does not define the jurisdiction of the justice nor make a grant thereof in specific cases. There are statutes defining the jurisdiction of a justice of the peace, and the only one which is pertinent to this review is section 79-207, Comp.Stats.1929, enacted shortly after the adoption of the Constitution, and carried forward in the 1915

Code as section 3173. It is as follows: "Justices of the peace shall have jurisdiction in all civil actions; in which the debt or sum claimed shall not be in excess of two hundred dollars exclusive of interest."

■ This must be read in connection with the limitations contained in section 26 of article 6 of the Constitution quoted from supra, so that in effect the law stands: "Justices of the peace shall have jurisdiction in all civil actions, in which the debt or sum claimed shall not be in excess of two hundred dollars exclusive of interest, except where the title to real estate or the boundaries of land may be in dispute or drawn in question."

Section 79-206, Comp.Stats.1929, quoted supra, is neither a grant of jurisdiction nor a limitation thereon. It is, as the compilers of both the 1915 codification and the 1929 compilation thought, a procedural direction to justices of the peace as to what to do when the lack of jurisdiction shall "appear."

The next question to consider is how and when it shall be made to appear that the title to real estate may be in dispute or drawn in question in order to divest the jurisdiction of the justice of the peace. It is very generally provided by statute in the different jurisdictions that justices shall have no jurisdiction of actions in which the title to real property is involved. 35 C.J. 499.

"In order to oust the jurisdiction the question of title must ordinarily be directly and necessarily involved. And so, while a justice cannot determine questions of title, yet he may receive in evidence deeds, contracts, and other evidences of title when introduced for collateral purposes." 35 C. J. 500.

Many decisions are cited in support of the text in notes 52 and 53. Hart v. Hart, 48 Mich. 175, 12 N.W. 33, cited, affords an illustration which is applicable to the case at bar. That was an action of trover for hoops cut from lands. On the trial the defendant claimed that these hoops were cut upon lands belonging to the estate of Alvin N. Hart, deceased, and he offered in evidence the patent from the United States to Hart for these lands, and a power of attorney from the heirs of said Hart, deceased, of which plaintiff was one, to him, the defendant, to sell and convey all or any of the property, real or personal, belonging to said heirs. These offers were objected to as inadmissible under the pleadings and rejected. The Supreme Court, in reversing the judgment, said: "We are of opinion that the court erred in rejecting this evidence. There was really no controversy concerning the title to lands. A party may, for the purpose of identifying and proving his title to personal property, show that it was taken from off certain lands and that he was the owner thereof, but this does not bring the matter of title to lands in question. It would not follow in such a case that any controversy whatever would arise concerning the title to the lands, or that as between the parties the jury would have to pass upon a question of conflicting titles. In this case the plaintiff had joined with his cotenants in executing and delivering to the defend-

ant a power of attorney authorizing the latter to sell the real and personal property belonging to or owned by them as heirs at law of Alvin N. Hart, and under this authority the defendant clearly had the right to show that the hoops in question came from off lands which the deceased had owned."

■■ There is very little support to the doctrine that a question of title to land raised only indirectly will oust jurisdiction. We would be reluctant to adopt a construction which will leave it open to raise a question of title to land incidentally, collaterally, or indirectly. It is suggested that the language of our Constitution, quoted supra, which says the justice shall not have jurisdiction when title to real estate "may be in dispute or drawn in question," aided by the statute which says that "if it appear on the trial * * * from the evidence, that the title to lands is in question, the justice shall * * * cease all further proceedings," supports a view that the jurisdiction of the justice may be "drawn in question" indirectly, collaterally, or incidentally. It does not seem to us that the fact that the statute contemplates that the dispute may appear "on the trial * * * from the evidence" is of especial significance in support of such construction. No strictly formal pleadings are required in the justice of the peace court. Each party may plead orally, but shall give a bill of particulars of his demand if required by the justice or the opposite party. Section 79-308, Comp.Stats.1929. It is required that the summons must set forth the "nature of the action," and defendant is required to make answer to plaintiff's demand. Surely if it appear from the summons, or answer, or other pleadings, written or oral, that "the title to real estate * * * may be in dispute or drawn in question," it would be the duty of the justice to "make an entry thereof on his docket and cease all further proceedings." So we think the language of section 79-206 does not militate against the generally accepted principles declared in 35 C.J. 500, quoted supra.

As to whether the question of title to real estate may be in dispute or drawn in question will depend upon the facts of each case from the pleadings and evidence. It will depend largely upon "the nature of the action and pleadings therein." 35 C.J. 501, and see note 61 for illustrations of instances where title held involved and where not.

In Pankey v. Modglin, 116 Ill.App. 6, which was a suit commenced before a justice of the peace to recover for breach of covenant as to title to real estate, when the cause came on for trial the defendant moved to dismiss the suit for want of jurisdiction as to the subject-matter. The justice denied the motion, heard the evidence, and rendered judgment in favor of plaintiffs for $21.-42. Defendant appealed to the county court and there renewed his motion to dismiss. That court held that the justice of the peace had no jurisdiction and dismissed the suit. The appellate court said that this was error. The appellate court said that the suit was "for the recovery of money only" of which the justice of the peace had jurisdiction.

The court went on to say: "No court could render any judgment in such action directly affecting the title. The question of title was only incidentally involved, and justices of the peace have unquestioned jurisdiction in a number of instances where title to real estate is so involved that it must be incidentally determined. This is sometimes so in forcible entry and detainer suits, yet such suits never directly involve title, and it is often so in actions for damages to real estate. Where the statute gives a justice of the peace jurisdiction, courts are powerless to impose limitations on such jurisdiction by construction. The fact that title may be incidentally involved does not oust a justice of the peace of jurisdiction. Village of Dolton v. Dolton, 201 Ill. 155 [66 N.E. 323]; Cobine v. McKittrick, 186 Ill. 324 [57 N.E. 880]; Pitts v. Looby, 142 Ill. 534 [32 N.E. 519]. Unless otherwise provided by statute, the test as to whether title, is so directly involved as to deprive a justice of the peace of jurisdiction, is whether the issues to be litigated demand a judgment affecting title. Where the issues demand a judgment for the recovery of money only, title is not directly involved."

The Supreme Court of Wyoming, in Jenkins v. Jeffrey, 3 Wyo. 669, 29 P. 186, 188, had before it a case in which it was contended that the court did not have jurisdiction because the question of title to land was involved. The court clearly demonstrated that the question of title is not involved in a forcible entry and detainer case, as has also been held by our court.

The court went on to say: "The cases are almost unanimous in holding that, title not being in issue, no evidence to disprove the complainant's title is admissible. Evidence of title is sometimes admissible in forcible entry and detainer and detainer suits to show the purpose for which the entry was made, and the character and extent of the possession, though evidence of an adverse title cannot be given to prove the extent of the defendant's possession."

The Wyoming statute (Rev.St.1887, § 3435) read as follows: "If it appear, on the trial of any cause before a justice of the peace, from the evidence of either party, that the title to land or boundaries, shall be disputed or brought in question by the other party, by pleading or evidence, the justice shall immediately make an entry thereof in his docket and cease all further proceedings in the cause, and shall certify and return to the district court of the county a transcript," etc.

It will thus be seen that the Wyoming statute was not unlike the provisions of our Constitution and statute. The court quoted from an Ohio decision (Petsch v. Mowry, 1 Cin.R. 36) as follows: "The action for detainer is a possessory action merely. In general the title of the plaintiff is not to be investigated. The nature of his estate, whether fee-simple or for years, is immaterial. His possession at the time of making the tenancy and the delivery of the possession is sufficient; and the defendant cannot, by the introduction of the proof of title, take away the jurisdiction, for that

would put it in his power to defeat the action."

Quoting further from the Ohio decision: "We can see no reason why it is not possible to avoid so strict a construction, when it would deprive justices of jurisdiction in so large and important a class of cases as that of the various actions of detainer; for so strict a construction as that suggested by the supreme court would, at a single blow, strike the whole act relating to detainer from the Code. We cannot think this to have been the intention of the legislature."

We would hesitate to give the provisions of our Constitution and statutes relative to limitations upon the jurisdiction of justices of the peace, where title to real estate is in dispute or drawn in question, a construction which would deprive the justice of the peace of jurisdiction in so large a class of cases as ordinarily arise under our forcible entry and detainer statute.

Nichols v. Bain, 42 Barb.(N.Y.) 353, is an instructive case. The syllabus is as follows: "Where, upon a trial in a justice's court, a deed of real estate is offered in evidence, not to establish a title to land, but to show the performance of a condition precedent to the defendant's liability upon the instrument sued on, the justice should receive the deed, the same as other evidence, and retain jurisdiction of the cause."

The court said:

"The purpose of the statute is that a justice of the peace, shall not in any case have jurisdiction to try a disputed title to real property. But did it appear on this trial from the plaintiff's own showing that the title to real property was in question? It seems to me that it did not. A deed of real estate was introduced in evidence, not to establish a title to land, for that was not the issue, but to show the performance of a condition precedent to the defendant's liability upon the instrument which was the foundation of the action. That condition precedent was, that the plaintiff should purchase certain property owned by certain heirs. And a purchase from them was a performance, even though they had but an imperfect title. It was the purchase from said heirs, and not the extent or validity of their title, which was the fact sought to be established by the introduction of the deed in evidence; although I do not mean to admit that it would make any difference even had the plaintiff tried to establish a perfect title.

"It was said in Main v. Cooper (25 N.Y. [180], 184), that 'in all cases when deeds or paper evidences of title to real estate are introduced before a justice of the peace, he is entitled to consider the purpose for which they are introduced. If they are merely introduced incidentally, to establish some collateral fact not involving any title to, or interest in lands, he is to receive them like other evidence.'

"It was in this light that the justice, on the trial of this cause, should have permitted the introduction of the deed. It did not put in question any title to, or interest

in, lands. The title was collateral to the main issue on trial, and therefore the deed should have been received as other evidence, and jurisdiction of the cause retained."

In Putty v. Putty (Tex.Civ.App.) 6 S.W. (2d) 136, it was decided: "In suit to recover value of rents alleged to belong to minors and to have been converted by defendants, in which defendants denied that minors had any title to land, but claimed title in themselves, county court was not without jurisdiction on ground that case involved determination of title, since question of title was incidental only to rights of minors to recover rent."

The court said:

"The appellants, by proper assignment, challenge as error the action of the court in overruling their plea to the jurisdiction of the court, because the suit involved a determination of the title to the land.

"'The suit was not one "for the trial of title to land," or "for the recovery of land." The two expressions used in the Constitution in defining the jurisdiction of the district and county courts are evidently intended to convey the same meaning, and have reference to cases where the title to land is to be determined, or its recovery had, by the judgment sought. In actions for a debt or damages, in amounts within the jurisdiction of the county courts, the right of recovery may depend upon the title to land. The court having the power expressly given to determine such right to recover must decide all questions of law and fact upon which its determination depends. Thus the question of title comes incidentally into the case, and must be decided before the court can render judgment settling the claims in dispute. But in doing so it does not adjudicate or settle the title to the land, nor the right to recover it, but simply determines that the plaintiff is or is not entitled to recover the thing sued for within the jurisdiction. In the present case, if plaintiff owned the land, she had the right to recover for the trespass upon it. On the other hand, if defendant owned the land, or if plaintiff did not own it, defendant was not liable to plaintiff for taking gravel. Of course, either party might have rights in the land, growing out of the right of possession, and not dependent on the question of title, but they are not involved in this case.' City of Victoria v. Schott, 9 Tex.Civ.App. 332, 29 S.W. 681."

This decision was cited with approval in Southwestern Bell Tel. Co. v. Burris (Tex. Civ.App.) 68 S.W.(2d) 542, 543.

In Baltimore & O. R. Co. v. Owens, 130 Md. 678, 101 A. 605, it was decided: "Under Code Pub.Gen.Laws 1904, art. 52, § 7, providing that no justice of the peace shall have jurisdiction in actions where the title to land is involved, it must appear to the court, from the nature of the action itself, that it is one in which the title to land is necessarily and directly involved, in order to oust and defeat the jurisdiction of the justice of the peace, and of the circuit court on appeal."

The judgment will be reversed so far as it pertains to the garnishment proceedings. The cause will be remanded for a new trial of such garnishment proceedings in accordance with the views herein expressed. And it is so ordered.

HUDSPETH, C. J., and SADLER, BRICE, and ZINN, JJ., concur.