**331 P.2d 1106**

**Paul S. BROWN, Plaintiff-Appellee,**

**v.**

**Lorena BIGHAM, Defendant-Appellant.**

**No. 6422.**

Supreme Court of New Mexico.

Sept. 16, 1958.

Rehearing Denied Dec. 10, 1958.

Heidel & Swarthout, Lovington, for appellant.

Williams & Johnson, Hobbs, for appellee.

SADLER, Justice.

The appellant was a defendant in a forcible entry and detainer action in the court of a justice of the peace in Lea County, New Mexico, where she suffered a judgment against her and removed the cause by appeal to the district court of the county and upon a trial *de novo* suffered a like fate. Remaining dissatisfied with the re-

sult and persisting in her effort to right the wrong thus inflicted upon her, as she claims, the matter is brought before us by appeal wherein she seeks a revision and correction of the judgment the district court imposed upon her.

A jury having been waived, the cause was tried before the court, at the conclusion of which the trial judge filed in the cause the decision containing his findings of fact and conclusions of law which we shall summarize in as brief statement in narrative form as the facts will permit. The parties will be referred to here as they were below, the defendant being the appellant and the plaintiff the appellee.

The plaintiff was the owner of the North half of Lot 1, Section 4, Township 19 South, Range 36 East, N.M.P.M., located in Lea County, New Mexico. The improvements located on the premises described consisted of a service station and a building occupied by a cafe. The premises were owned by the plaintiff and two other parties as co-tenants and on October 14, 1955, were rented to Warren Williams for two years, or until October 15, 1957, at a monthly rental of $100 per month, with the first and last two months rental payable in advance. Co-tenants sold out to plaintiff.

Subsequent to execution of the lease, and on January 7, 1956, Williams assigned his lease to C. F. Kelsay who, in turn, and on June 7, 1956, assigned the lease to Mrs.

J. B. Walden. Subsequent to the last mentioned assignment, Mrs. Walden paid a rental of $25 per month direct to the plaintiff, Brown, and was treated by him as a tenant from month to month of the service station occupied by her. In like fashion, and in the meantime, the defendant, Lorena Bigham, having purchased the cafe fixtures from one Hagood who owned same, began paying rent direct to plaintiff, Brown, for the portion of said premises occupied by her, to-wit, the cafe building.

Thereafter, and on October 10, 1956, the plaintiff offered to lease the above described premises to the defendant, Lorena Bigham, for a term of five years at a monthly rental of $100 per month with an option in her to purchase the property as provided in the proposed lease, each party being privileged to terminate the lease on 120 days written notice. The plaintiff delivered an original and two copies of the proposed lease to her the original and both copies having been signed by him. He advised defendant to look over the lease contract and, if agreeable, to execute same and return to plaintiff within two or three days.

On October 20, 1956, plaintiff agreed to sell the premises to James Gibbs and his wife, and they reduced their agreement to writing on October 23, 1956.

Three days later, and on October 26, 1956, the plaintiff and Gibbs visited the

premises in question and advised defendant of entering into the sales agreement for the property and that he, Brown, was withdrawing his offer to lease such property to her.

On November 1, 1956, W. D. Girand, Jr., delivered a letter and the original of the lease contract to plaintiff at his office in Hobbs, New Mexico, tendering to plaintiff at same time cashier's check in the sum of $100 as payment of the first month's rent under the proposed lease contract theretofore submitted to her by plaintiff. At the time of delivering the original lease contract to plaintiff by Girand, it bore the signature of defendant, Bigham, with the signatures of Travis Jackson and Naomi Bates added as witnesses. Actually, the plaintiff did not see the original lease contract following the affixing of her signature thereto by defendant, Bigham, until November 1, 1956.

The plaintiff served notice of termination of tenancy on defendant, Lorena Bigham, on December 1, 1956, and on defendant, Jackson, occupant of the filling station, on December 3, 1956, notifying each of them that their tenancy was terminated and that unless they vacated the premises on or before January 1, 1957, an action of unlawful detainer would be instituted against them to recover possession of the premises occupied by each. Formal notice to vacate was served on both Lorena Bigham and Travis Jackson on January 7, 1957, to vacate the premises within three days from the date each received said notice.

The defendant, Bigham, occupied the premises in question under a tenancy from month to month with the plaintiff and was so treated by him. The plaintiff on January 11, 1957, was lawfully entitled to possession of the cafe building on the premises in question and defendant, Lorena Bigham, on such date continued in possession thereof and unlawfully detained the same and still detains and holds same against the plaintiff. Furthermore, the plaintiff was entitled to the possession of the cafe premises at the time this action was commenced. In addition, the defendant, Lorena Bigham, has failed to pay the plaintiff rental of $75 per month due on the cafe building from November 1, 1956, to date of the judgment.

From findings embraced in the foregoing narrative statement, the court concludes as a matter of law, that to January 1, 1957, the defendant, Lorena Bigham, occupied the premises in her possession as a tenant from month to month of plaintiff. The offer of plaintiff to lease said premises to her was withdrawn prior to acceptance of said offer by her. On January 11, 1957, and at the time this action was commenced, the plaintiff was the owner and entitled to the possession of that portion of the premises in question occupied by the defendant, Lorena Bigham. At all times

since January 11, 1957, the defendant has continued in possession of said premises occupied by her, unlawfully detaining the same against the plaintiff who is entitled to the possession thereof.

In the first claim of error presented counsel for defendant insists that following introduction in evidence by them of the questioned lease contract dated November 1, 1956, for a five-year period commencing on that date, the forcible entry and detainer action was instanter converted into a suit to try the title to real estate in violation of 1953 Comp., § 36–9–10, and it might have been added, contrary to Const., Art. IV, § 26, denying jurisdiction to a justice of the peace in any matter involving title to real estate. Having introduced the purported lease in evidence, to which no objection was made by the plaintiff, counsel for defendant, Bigham, immediately, moved to halt all proceedings and dismiss the action, resting their objection to further proceedings upon the claim it would amount to a violation of the statute and constitutional proviso above mentioned.

The trial court denied the motion of defense counsel, calling attention to the fact that according to testimony of plaintiff the purported lease signed by him was left with defendant to accept or reject within two or three days and return to him signed, if acceptable; that he never heard from her and considering the offer contained in the lease rejected, entered into a contract for sale of the property to another person. The reason assigned by the trial judge supports his ruling.

We have held that where the title to real estate is drawn in question indirectly or incidentally, statutory and constitutional provisions such as this one are not violated. See, Wood Garage v. Jasper, 41 N.M. 289, 67 P.2d 1000, 115 A.L.R. 496 (507), where the subject in question is annotated, and many cases from over the United States are listed, sustaining the rule announced above. In the annotation cited, supra, in A.L.R. at page 507 the rule is stated, as follows:

"Generally a justice of the peace or court having similar jurisdiction is not ousted of jurisdiction of a case by the raising therein of the question of title to land, where the title to land is involved only indirectly, collaterally, or incidentally."

And, continuing on page 510, the author of the annotation deals specifically with actions to recover possession of land, such as this one, as follows:

"In actions to recover possession of land, such as actions for forcible entry and detainer, generally, but not universally, the title to the land is not involved so as to divest of jurisdiction a justice's court or a court having similar jurisdiction in this respect."

In view of the fact that the trial judge, on findings supported by substantial evidence, held the purported lease never had any valid existence, by reason of withdrawal of the offer it contained before acceptance, it is manifest the title to land was never drawn in question in this case, directly or indirectly.

As already indicated, the question whether the purported lease of October 10, 1956, ever had valid existence became the primary issue in this case. There was no question but what a written lease on the premises in question was drawn up, signed and an original and two copies thereof delivered to the defendant by plaintiff in the cafe which she operated on the premises with the request at the time that she look over the lease and, if satisfactory, to sign and return same to him within two or three days. Ten (10) days later, on October 20, 1956, not having heard from the defendant, the plaintiff agreed to sell the premises in question to James Gibbs, and his wife. The agreement was reduced to writing on October 23, 1956.

Three days later, on October 26, 1956, the plaintiff, Brown, accompanied by Gibbs, visited the defendant at the cafe and there informed her he was withdrawing his offer to lease the premises, having sold the property to Gibbs. Incidentally, she was informed at that time that the purchaser, Gibbs, would entertain an offer to lease from her if she desired to make one.

The plaintiff was not advised by defendant that she had accepted his lease proposal until October 31, 1956, when W. D. Girand, Jr., so informed him but did not see a copy of the lease bearing her signature until November 1, 1956.

Findings in conformity with the recitals hereinabove appear in the court's decision. In due course, the plaintiff gave Lorena Bigham and Travis Jackson notice of termination of tenancy and three days' notice to vacate. If Jackson ever appeared in the case we find no record of it. The findings of the trial court are supported by substantial evidence as a reading of the record discloses. It would serve no useful purpose and extend this opinion unduly, to set out at length herein the evidence for and against them.

It follows from what has been said that the judgment is free from error and should be affirmed.

It will be so ordered.

LUJAN, C. J., and McGHEE, COMPTON and SHILLINGLAW, JJ., concur.