The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **February 13, 2025**

**No. A-1-CA-40877**

**TRIPLE R DEVELOPMENT LLC,**

      Plaintiff-Appellee,

v.

**ANTHONY STINEBAUGH and**
**UNKNOWN OCCUPANTS,**

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Erin B. O'Connell, District Court Judge**

Saucedo Chavez, P.C.
Daniel C. Apodaca
Albuquerque, NM

for Appellee

New Mexico Legal Aid
Corinna Laszlo-Henry
Las Vegas, NM

for Appellants

**OPINION**

**BACA, Judge.**

{1}     This appeal stems from Plaintiff Triple R Development, LLC's, attempts to gain possession of a home in which Defendant Anthony Stinebaugh was residing. Following a trial, the metropolitan court granted Plaintiff possession of the home through a forcible entry or unlawful detainer. Defendant appealed to the district court but the appeal was dismissed and the district court issued a writ for forcible entry or unlawful detainer. Defendant appeals to this Court. In this appeal, Defendant advances two arguments: (1) the metropolitan and district courts erred in exercising jurisdiction over this matter; and (2) the appellate process Defendant was afforded was insufficient. Because a question of title was directly and necessarily involved in resolving the question of possession, the metropolitan court lacked jurisdiction over the matter. We accordingly reverse and remand the case to the metropolitan court with instructions to dismiss the petition by owner for writ of restitution.

**BACKGROUND**

{2}     The home at issue in this case was owned by Defendant's parents, Gerald W. and Dorcis Stinebaugh (Parents), who both died several years before the commencement of this case in the metropolitan court. After Parents' death, Defendant continued to reside at the home with his daughter, Shelby, and at least one other Stinebaugh child. Informal probate proceedings of Parents' estates were

initiated in 2019 by Shelby. Shelby was appointed as the personal representative of both estates and sold the home to Plaintiff soon after.

{3} Seven months after the sale was executed, Plaintiff sent an eviction notice to the occupants, pursuant to the Uniform Owner-Resident Relations Act (UORRA), NMSA 1978, §§ 47-8-1 to -52 (1975, as amended through 2007), demanding that the occupants vacate the home. Defendant contacted the probate court and informed it that he had not signed consent to Shelby's appointment as personal representative. The probate court transferred the matter to district court for formal probate proceedings.

{4} The district court sitting in probate for the Estate of Gerald Stinebaugh held an emergency hearing soon after the matter was transferred. Plaintiff, Defendant, Shelby, and one other Stinebaugh child attended the hearing. During the hearing, Defendant maintained that he did not know about Shelby's appointment as personal representative, nor about the sale of the home. The district court asked Plaintiff why it sent a notice of eviction. Plaintiff answered that, since it has a general warranty deed showing that it rightfully bought the home, it is the owner of the home. After hearing statements from each party in attendance, the district court set a presentment hearing for inventory of the estate. When Plaintiff asked the district court whether it should initiate eviction proceedings in metropolitan court, the district court responded that it had not reviewed the sale of the home and that, at this point, it was

not clear whether the home was part of the estate. Nevertheless, prior to the presentment hearing, Plaintiff filed the instant case in the metropolitan court.

{5} Plaintiff filed a petition by owner for writ of restitution (the Petition) ostensibly, pursuant to UORRA in the metropolitan court. The Petition alleged, inter alia, (1) Plaintiff purchased the home in Albuquerque, New Mexico, from Shelby; (2) at the time it purchased the home, Plaintiff was advised that the home was uninhabited; (3) Plaintiff later determined that Defendant continued to reside in the home; and (4) Plaintiff did not have a rental agreement with any individual, including Defendant, related to the home. Based on those allegations, Plaintiff sought immediate possession of the home, issuance of a writ of restitution, costs and attorney fees. In his response to the Petition,[1] Defendant alleged that Shelby forged his name on the paperwork to become personal representative of his Parents' estates, and that the probate court had revoked the appointment. At a hearing before the metropolitan court on the Petition, the Petition was amended and was treated as an action for forcible entry or unlawful detainer.

{6} A trial on the Petition was held on June 27, 2022. Defendant did not attend the trial, and as a result, the metropolitan court granted the Petition and issued a writ of execution for forcible entry or unlawful detainer that ordered Defendant to be

---

[1]Defendant's pleading is labeled as a motion, but we construe it as a response to the Petition. *See Bruce v. Lester*, 1999-NMCA-051, ¶ 4, 127 N.M. 301, 980 P.2d 84 ("[W]e regard pleadings from pro se litigants with a tolerant eye.").

removed from the home. On July 1, 2022, Defendant timely filed a motion to set aside the judgment. On August 12, 2022, the metropolitan court issued its order granting Defendant's motion to set aside the judgment of June 27, 2022. On August 16, 2022, three days before the next trial setting, Defendant filed a pleading with the metropolitan court stating that Shelby had forged his signatures on documents leading to her appointment as personal representative of his Parents' estates and that Shelby's appointment had since been revoked by the probate court. Even so, following the second trial on August 19, 2022, the metropolitan court again issued a writ of execution for forcible entry or unlawful detainer ordering Defendant be removed from the home. Defendant timely appealed to the district court.

{7} On appeal before the district court, Plaintiff moved the district court to hear the appeal on an expedited basis. On October 5, 2022, the district court held a status conference at which Defendant did not appear. The district court dismissed Defendant's appeal based upon Defendant's failure to file a timely statement of appellate issues, pursuant to Rule 1-073(H) NMRA. On October 19, 2022, Defendant moved the district court to set aside the dismissal. On November 29, 2022, without a hearing, the district court denied Defendant's motion to set aside the order of dismissal. In the order, the district court noted that Defendant failed to provide a good faith or substantive basis for reconsideration. That same day, the district court issued an amended order of dismissal and its own writ of execution for

forcible entry or unlawful detainer. Defendant timely appealed to this Court and the district court subsequently quashed the writ of execution pending the appeal.

**DISCUSSION**

{8}   As stated above, Defendant brings two challenges on appeal: (1) the metropolitan court and the district court erred in exercising jurisdiction over this matter; and (2) the appellate process Defendant was afforded was insufficient. Because we agree with Defendant's argument that the metropolitan court lacked jurisdiction to issue a judgment for forcible entry or unlawful detainer in this matter, we do not reach Defendant's second challenge on appeal. This case asks us to determine whether the question of title was directly and necessarily involved with the question of possession, such that the metropolitan court was deprived of its jurisdiction over the action for forcible entry or unlawful detainer.

{9}   In New Mexico, metropolitan courts "constitute a state magistrate court." NMSA 1978, § 34-8A-2 (1980). "Magistrate courts are courts of limited jurisdiction and are without authority to take action unless authority is affirmatively granted by the Constitution or statutory provision." *White v. Farris*, 2021-NMCA-014, ¶ 14, 485 P.3d 791 (alteration, internal quotation marks, and citation omitted); *see Martinez v. Sedillo*, 2005-NMCA-029, ¶ 4, 137 N.M. 103, 107 P.3d 543 ("[Article 6, Section 26 of the New Mexico C]onstitution affords the [L]egislature the ability to confer jurisdiction upon courts of original limited jurisdiction."). "[A] district

court hearing an appeal from the magistrate court is bound by the lower court's jurisdictional limits and . . . if the magistrate court lacked jurisdiction, the district court would also lack jurisdiction." *Cruz v. FTS Constr., Inc.*, 2006-NMCA-109, ¶ 19, 140 N.M. 284, 142 P.3d 365; *see McCann v. McCann*, 1942-NMSC-051, ¶ 11, 46 N.M. 406, 129 P.2d 646 ("District [c]ourts upon appeals, exercise only such jurisdiction as the lower tribunal possessed."). "The question of whether a court has subject matter jurisdiction is a question of law which we review de novo." *Palmer v. Palmer*, 2006-NMCA-112, ¶ 13, 140 N.M. 383, 142 P.3d 971.

{10} A forcible entry or unlawful detainer action permits a plaintiff who is lawfully entitled to possession of real property at the time of suit to regain possession of the property against a defendant who is in possession of the real property but who has no right to lawful possession. *See* NMSA 1978, § 35-10-1(A) (1968) (listing the circumstances in which forcible entry or unlawful detainer are permitted). "Forcible entry or unlawful detainer . . . does not determine title to the property or the absolute right to possession. A judgment has only the effect of placing the parties in their original positions prior to the forcible entry or unlawful detainer." *Ott v. Keller*, 1976-NMCA-124, ¶ 6, 90 N.M. 1, 558 P.2d 613.

{11} Section 35-10-1(B) expressly grants New Mexico's magistrate court jurisdiction over actions for forcible entry or unlawful detainer of real property. However, "questions of title or boundaries of land shall not be investigated in an

6

action for forcible entry or unlawful detainer." NMSA 1978, § 35-10-3(C) (1968). Moreover, a magistrate court cannot investigate questions of title in a forcible entry or unlawful detainer action because they are deprived of subject matter jurisdiction in actions in which the title or boundaries of land may be in dispute or drawn into question. *See* NMSA 1978, § 35-3-3(C)(4) (2001) ("A magistrate has no jurisdiction in a civil action . . . in which the title or boundaries of land may be in dispute or drawn into question."). Thus, to determine whether the metropolitan court had jurisdiction in this case, we must examine whether a question of title was directly and necessarily involved in resolving the question of possession.

{12}     Our Supreme Court first evaluated whether questions of title deprive a court of limited jurisdiction of its jurisdiction in *Wood Garage v. Jasper*, 1937-NMSC-019, 41 N.M. 289, 67 P.2d 1000. The Court concluded that a court of limited jurisdiction is not deprived of its jurisdiction where a question of title is drawn into question only indirectly or incidentally. *See id.* ¶¶ 14, 16; *see also State v. Brown*, 1963-NMSC-127, ¶ 12, 72 N.M. 274, 383 P.2d 243 (concluding that the justice of the peace had jurisdiction to hear the matter because "the issue as to who owns the lands [was] only incidentally involved"); *cf. White*, 2021-NMCA-014, ¶ 20 (rejecting the argument that the magistrate court was deprived of jurisdiction in a UORRA action because "[the p]laintiff's claim for possession did not threaten to change title to the property"). A question of title may deprive a court of its

7

jurisdiction; however, when the question of title is "directly and necessarily involved." *Wood Garage*, 1937-NMSC-019, ¶ 12 (internal quotation marks and citation omitted). The question of whether title is directly and necessarily involved in the action is dependent upon "the facts of each case from the pleadings and evidence," and whether the title issues being litigated "demand a judgment affecting title." *Id.* ¶¶ 13, 15-16, 24-25 (internal quotation marks and citation omitted); *see Brown*, 1963-NMSC-127, ¶ 11 (same).

{13}     Here, Plaintiff's right to possession relied entirely on the validity of its alleged title. To show that it had a lawful right to possession and was therefore entitled to a judgment to remove Defendant (and the other occupants) from the home, Plaintiff introduced a general warranty deed. The introduction of the warranty deed in evidence, in and of itself, did not necessarily place the title to the home directly and necessarily in dispute. *See Wood Garage*, 1937-NMSC-019, ¶ 19 ("[T]he defendant cannot, by the introduction of the proof of title, take away the jurisdiction, for that would put it in his power to defeat the action." (internal quotation marks and citation omitted)).

{14}     However, in response, Defendant alleged that Shelby had forged paperwork to become the personal representative of the estate in order to sell the home, and stated that the probate court had revoked Shelby's appointment as personal representative. While the metropolitan court did not determine the accuracy of

8

Defendant's allegations, it is undisputed that, at the time that Plaintiff initiated the action in the metropolitan court, the district court presiding over the formal probate of the estate was attempting to determine whether Shelby had authority to convey the home. That issue has not yet been resolved, and the parties continue to litigate whether the appointment of the personal representative was valid; and whether Shelby had the authority to transfer marketable title. Because it remains unclear whether Shelby could transfer marketable title, it is also unclear whether Plaintiff holds a valid general warranty deed, or whether the home should be deemed an asset in the estate inventory. But if Plaintiff does not have valid title, then it has no grounds to oust Defendant—and the other occupants of the home—through an action for forcible entry or unlawful detainer. *See Reinhart v. Lindholm*, 1972-NMSC-087, ¶¶ 2, 4, 84 N.M. 546, 505 P.2d 1222 (concluding that an unlawful detainer judgment was improper where the plaintiff's claimed title was "based upon a bitterly disputed contract between the parties" because "the question of title to land shall not be investigated in an action for unlawful detainer"); *cf. McCann*, 1942-NMSC-051, ¶ 14 (concluding that the probate court had no jurisdiction to adjudicate a contract dispute where the appellee would be entitled to take property as an heir unless the contract would defeat her claim). Accordingly, a question of title is directly and necessarily involved in this action for forcible entry or unlawful detainer, because

9

the metropolitan court could not answer whether Plaintiff had a lawful right of possession without implicitly grappling with validity of the disputed title.[2]

{15}    For these reasons, we conclude that the metropolitan court could not resolve Plaintiff's right to possession without also investigating the question of title, and, as a result, the metropolitan court had no subject matter jurisdiction over the action for forcible entry or unlawful detainer. *See Reinhart*, 1972-NMSC-087, ¶ 4; *McCann*, 1942-NMSC-051, ¶¶ 7, 14; *Wood Garage*, 1937-NMSC-019, ¶ 16; *see also Parrish v. Fed. Nat'l Mortg. Ass'n*, 787 S.E.2d 116, 123 (Va. 2016) (concluding that a lower court lacked jurisdiction over an action for unlawful detainer because the defendants' raised a bona fide question of title requiring the court to try the question of title); *Mitchell v. Armstrong Cap. Corp.*, 911 S.W.2d 169, 171 (Tex. App. 1995) (concluding that the lower court did not have jurisdiction over an action for forcible detainer where the defendant asserted that the plaintiff's title was void, and the plaintiff's right to actual possession depended solely on the validity of the circumstances in which the plaintiff obtained the title). As a consequence of the metropolitan court's lack of jurisdiction, the district court also lacked jurisdiction to address the merits on appeal. *See Cruz*, 2006-NMCA-109, ¶ 19.

---

[2]We note that the district court sitting in probate has exclusive jurisdiction to determine whether the appointment of the personal representative was valid, and, by extension, whether the warranty deed to Defendant was valid. *See* NMSA 1978, § 45-1-302(A)(1) (2011).

10

**CONCLUSION**

{16}     For the reasons stated above, the metropolitan court lacked jurisdiction over the matter. We accordingly reverse and remand this case to the metropolitan court with instructions that it dismiss the Petition.

{17}     **IT IS SO ORDERED.**


_____
                              **GERALD E. BACA, Judge**

**WE CONCUR:**


_____
**JENNIFER L. ATTREP, Chief Judge**


_____
**JACQUELINE R. MEDINA, Judge**

11