# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-014**

**Filing Date: January 11, 2021**

**No. A-1-CA-37283**

**JAY WHITE,**

      Plaintiff-Appellee,

v.

**JOSEPH FARRIS, JR.,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Lyndy D. Bennett, District Judge**

Released for Publication May 11, 2021.

Mason & Isaacson, P.A.
James J. Mason
Gallup, NM

for Appellee

New Mexico Legal Aid
Joel Jasperse
Gallup, NM

for Appellant

## OPINION

**IVES, Judge.**

**{1}** Defendant Joseph Farris, Jr. appeals from a district court judgment, on de novo appeal, in favor of Plaintiff Jay White, affirming the magistrate court's writ of restitution and award of damages, past-due rent, and attorney fees. Defendant argues that the district court erred in (1) concluding that it had jurisdiction to decide Plaintiff's claims for possession and damages and jurisdiction over Defendant's person; (2) concluding that Plaintiff properly withheld Defendant's personal property for payment of rent and damages; and (3) awarding damages and attorney fees to Plaintiff. We affirm in part and reverse in part, holding that (1) the district court had subject matter jurisdiction over

Plaintiff's claim for damages, Defendant's counterclaims, and Defendant's de novo appeal; (2) the magistrate court lacked personal jurisdiction over Defendant; and (3) the Uniform Owner-Resident Relations Act (UORRA), NMSA 1978, §§ 47-8-1 to -52 (1975, as amended through 2007), requires the owner of a rental property to return a resident's personal property upon demand and payment of reasonable storage fees if the resident demands its return within three days following the execution of a writ of restitution. We also vacate the district court's award of attorney fees and vacate in part its award of damages to Plaintiff.

**BACKGROUND**

**{2}**     In August 2014, the parties entered into a contract (the lease option contract) pursuant to which Plaintiff "agree[d] to lease" and Defendant "agree[d] to rent" a residential property located in Vanderwagen, New Mexico, for sixty months. Under its terms, the contract was set to begin in September 2014, with Defendant to commence payments of $1,000 per month in October 2014. The parties' agreement included an option to purchase that entitled Defendant to buy the residence and land on which it was situated for $116,000 at any time during the contract's term, with all payments made prior to the date Defendant exercised the option to be applied toward the purchase price. In October 2014, Defendant paid Plaintiff $10,000. The lease option contract made no mention of this payment, but Defendant testified at trial in the district court that it was made as an agreed-upon down payment toward the purchase price of the property. The property was in less-than-pristine condition when Defendant and his family moved in, and Defendant's trial testimony indicated that he invested time and expense in repairing it, including a week spent fixing the property's roof.

**{3}**     Defendant did not pay the amounts due under the contract for September and October 2016 until November 2016, and he stopped making payments altogether beginning with the payment due for November. That month, a process server came to the property to deliver a three-day notice of nonpayment of rent. *See generally* § 47-8-33(D) (providing in pertinent part that, "[i]f rent is unpaid when due and the resident fails to pay rent within three days after written notice . . . , the owner may terminate the rental agreement and the resident shall immediately deliver possession of the dwelling unit"). The process server later testified that he spoke with an unidentified woman at the property and, after the woman refused to accept service, posted the notice on the gate to the property.

**{4}**     Plaintiff filed a petition for restitution seeking possession of the property in magistrate court on December 9, 2016. The petition included a claim for damages consisting of $3,000 in back rent, $33.33 in rent per day until Plaintiff regained possession, and further damages to be determined by the court, as well as costs and attorney fees. Plaintiff requested that the claims for possession and damages be tried separately. *See generally* § 47-8-42 (providing that a petition for restitution "may also contain other causes of action relating to the residency, but such causes of action shall be answered and tried separately, if requested by either party in writing"). On December 20, 2016, the magistrate court issued a summons directing Defendant to appear for trial

on January 9, 2017. A return attested to by a private process server was filed on the day of trial. The return indicated that service of the summons had been effected by posting on January 6, 2017. The record does not contain any return showing that service was made by any other method. Defendant did not appear for the January 9, 2017 trial, and the magistrate court entered a default judgment for possession in Plaintiff's favor, scheduling a hearing on the issue of damages for the end of the month. In accordance with its judgment, the court issued a writ of restitution that directed the sheriff to restore Plaintiff to possession of the premises.

{5}     The sheriff executed the writ on January 17, 2017. Defendant was given roughly forty-five minutes to remove personal property belonging to himself, his wife, and their five children from the premises. As a result, much of that property remained on the premises after Defendant was evicted, including, among other things, vehicles, a variety of electronics, furniture, kitchen appliances and accessories, toys, clothing, and tools.

{6}     Defendant obtained counsel, and his attorney contacted Plaintiff's attorney on January 19, 2017, to request the return of Defendant's personal property. Invoking Section 47-8-34.1(C), Defendant's attorney asserted that the UORRA required Plaintiff to provide Defendant with "reasonable opportunities to come to the property and move out [his family's] personal belongings." *See generally id.* (providing, among other things, that "[w]here [a] rental agreement terminates by a writ of restitution, the owner shall have no obligation to store any personal property left on the premises after three days following execution of writ of restitution, unless otherwise agreed by the owner and resident"). Plaintiff's attorney responded that Plaintiff had placed the property in storage and would not return it until the damages hearing, indicating that, if the court allowed him to, Plaintiff intended to sell it to satisfy the past-due rent and pay for damage to the residential property caused during Defendant's occupancy.

{7}     Without taking any action in the magistrate court proceeding, Defendant filed a notice of appeal in the district court on January 25, 2017. The next day, Defendant filed a motion asking the district court to declare that service in the magistrate court had been improper and order Plaintiff to return Defendant's personal property, either because of this deficiency or because Plaintiff's continued withholding of Defendant's personal property violated Section 47-8-34.1(C). Roughly one week later, Defendant filed another motion, this time requesting that the district court vacate the magistrate court judgment and dismiss Plaintiff's complaint. In both motions, Defendant asserted that service of process had been insufficient because it was by posting only and because trial had been held only three days after service was effected. *See generally* Rule 2-202(F)(1) NMRA (providing that, "[i]f the defendant is absent" and no other qualified person is "available or willing to accept delivery, then service may be made by posting such copies in the most public part of the defendant's premises, and by mailing to the defendant at his last known mailing address copies of the process"); § 47-8-43(A)(1) (providing that trial of an action for possession brought by the owner of a rental property "shall be set . . . not less than seven or more than ten days after the service of summons").

**{8}** The district court denied both motions. The court rejected Defendant's challenges to process and ruled that the UORRA did not require Plaintiff to release Defendant's personal property, "but only to hold [it] for three days." It nevertheless directed Plaintiff to "immediately return" "work related items," "clothing," and "other necessities for daily living[,]" and instructed counsel for the parties to work in good faith to reach an agreement as to the items that fell into those categories.

**{9}** Defendant filed an answer in the district court proceeding after the court denied his motions. In his answer, Defendant admitted that he had breached the lease by failing to pay rent and that Plaintiff was entitled to possession of the premises. As defenses, Defendant renewed his challenge to the sufficiency of process, contested the magistrate court's subject matter jurisdiction over Plaintiff's claims, and contended that Plaintiff was not entitled to recover unpaid rent and damages because he had already regained possession of the property and retained all payments previously made, including the $10,000 payment made at the beginning of Defendant's occupancy. Defendant again requested that the district court order Plaintiff to return his property, and he asserted a counterclaim for conversion in which he asked that the district court award him damages "to compensate . . . for Plaintiff's refusal to return Defendant's personal property, . . . the loss of use of his personal property, and . . . any deterioration in the value of his personal property resulting from Plaintiff's moving and storage[.]"

**{10}** Plaintiff answered Defendant's counterclaims, and the parties then filed cross-motions for summary judgment, with Defendant raising the same issues raised in his prior motions and answer. After a hearing, the district court ruled that the matter would proceed to trial. The court concluded that Defendant had been properly served in the magistrate court proceeding because, although Rule 2-202 NMRA "allow[ed] service by posting *and* mailing[,]" Rule 1-004(J) NMRA "permit[ted] some discretion by permitting service in a manner reasonably calculated under all circumstances to apprise . . . Defendant of the action." Although it nevertheless concluded that the magistrate court had "improperly held trial within [three] days of service of the summons" contrary to Section 47-8-43, the court believed that "[j]udicial efficiency and equity demand[ed] that [the] matter proceed to trial de novo on the merits[,]" noting that "[a] dismissal would likely result in . . . Plaintiff refiling a petition starting the process anew."

**{11}** The court held a two-day bench trial, ultimately ruling in Plaintiff's favor on all issues and reiterating that "[t]he [m]agistrate[ court's] error [was] cured by the filing of the appeal and trial de novo in [d]istrict [c]ourt." The court awarded Plaintiff $8,252 in attorney fees and $10,703.57 in damages, consisting of $2,516 in back rent for the months of November 2016 through January 2017; $5,775 for damages to the premises; and $2,412.57 in storage fees. It reduced this award by $10,000 to reflect "the down payment for prospective purchase of the home which did not occur" and credited Defendant with an additional $750 to reflect fifty hours of labor spent repairing the roof of the property, believing that Defendant had provided "insufficient evidence concerning [other] repairs made to the home" and noting that Defendant had "provided no receipts for material." The court directed Plaintiff to sell the property still in his possession "in a commercially reasonable manner" and to provide the court with an accounting within

thirty days of sale, at which point the amount received from the sale would be credited toward Plaintiff's judgment and any excess paid to Defendant. Defendant appealed.

## STANDARDS OF REVIEW

**{12}** The facts relevant to our analysis are undisputed. We review de novo purely legal questions, including the interpretation of statutes, *Cordova v. Cline*, 2017-NMSC-020, ¶ 11, 396 P.3d 159, and our Supreme Court's rules, *State v. Anthony L.*, 2019-NMCA-003, ¶ 8, 433 P.3d 347. We set forth additional standards of review where necessary.

## DISCUSSION

### I. The Magistrate Court Had Subject Matter Jurisdiction Over Plaintiff's Claim for Possession

**{13}** Defendant contends that the district court was without jurisdiction on de novo appeal because the magistrate court lacked subject matter jurisdiction to decide Plaintiff's claims in the first instance. *See generally, e.g.*, *McCann v. McCann*, 1942-NMSC-051, ¶ 11, 46 N.M. 406, 129 P.2d 646. ("District [c]ourts upon appeals, exercise only such jurisdiction as the lower tribunal possessed."); *Cruz v. FTS Constr., Inc.*, 2006-NMCA-109, ¶ 19, 140 N.M. 284, 142 P.3d 365 ("[A] district court hearing an appeal from the magistrate court is bound by the lower court's jurisdictional limits and . . . if the magistrate court lacked jurisdiction, the district court would also lack jurisdiction."). We disagree, concluding that the UORRA granted the magistrate court subject matter jurisdiction over Plaintiff's claim for possession.

**{14}** Magistrate courts are courts of limited jurisdiction and are "without authority to take action unless authority is affirmatively granted by the [C]onstitution or statutory provision." *State v. De La O*, 1985-NMCA-023, ¶ 5, 102 N.M. 638, 698 P.2d 911 (internal quotation marks and citation omitted); *see also* N.M. Const. art. VI, § 26 ("The [L]egislature shall establish a magistrate court to exercise limited original jurisdiction as may be provided by law."); *Martinez v. Sedillo*, 2005-NMCA-029, ¶ 4, 137 N.M. 103, 107 P.3d 543 ("[Article 6, Section 26 of the New Mexico Constitution grants] the [L]egislature the ability to confer jurisdiction upon courts of original limited jurisdiction."). The UORRA itself contains such an affirmative grant of authority in Section 47-8-10(A), which provides in relevant part that "[t]he district or magistrate court of this state may exercise jurisdiction over any person with respect to any conduct in this state governed by the [UORRA] or with respect to any claim arising from a transaction subject to [the UORRA] for a dwelling unit located within its jurisdictional boundaries." The plain language of the statute demonstrates that the Legislature has endowed magistrate courts with subject matter jurisdiction over claims arising from "any conduct in this state governed by . . . or . . . a transaction subject to [the UORRA]."[1] *Cf. Woods v. MTC Mgmt.*, 967 S.W.2d 800,

---

[1] We have previously indicated in dictum that "Section 47-8-10(A) grants a district or magistrate court personal jurisdiction under the UORRA for claims 'with respect to any conduct' governed by the UORRA or 'arising from a transaction subject to' the UORRA." *Martinez*, 2005-NMCA-029, ¶ 9. The statutory

801 (Tenn. 1998) (agreeing that Tenn. Code Ann. § 66-28-105(a) (West 1991), which is substantially similar to Section 47-8-10(A), "expressly addresses and resolves the issue of subject matter jurisdiction"). Thus, whether Section 47-8-10(A) gave the magistrate court subject matter jurisdiction over Plaintiff's claims depends on whether the conduct or transaction giving rise to those claims was governed by the UORRA.

{15}    Whether the UORRA applies in turn depends on whether Defendant occupied the property pursuant to a "rental agreement," as defined in Section 47-8-3(P), or a contract for the sale of real property. *See* § 47-8-8 ("The [UORRA] applies to, regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state."); § 47-8-9(B) ("Unless created to avoid the application of the [UORRA], . . . occupancy under a contract of sale of a dwelling unit or the property of which it is part, if the occupant is the purchaser or a person who succeeds to his interest" "[is] exempted by that act[.]"); *see also* § 47-8-40(A)(2) (providing, in pertinent part, that "an owner may bring an action for possession if . . . the resident is in default in rent"). "[T]he UORRA applies to the extent that the parties' agreement was a [rental agreement] and does not apply to the extent it was a sale." *Hedicke v. Gunville*, 2003-NMCA-032, ¶ 6, 133 N.M. 335, 62 P.3d 1217. Where a rental agreement contains provisions outside the scope of the UORRA, "the [Act] applies flexibly to the portions of the parties' agreement that amount to a residential lease within [its] terms." *Id.* ¶ 11.

{16}    In this case, the district court found that the initial $10,000 payment was "in contemplation of [an] eventual purchase which did not occur" and concluded that the parties' agreement therefore "result[ed] in a basic lease agreement" governed by the UORRA. Defendant disputes this conclusion, presumably on the ground that the payment was made toward the purchase price set by a real estate contract. Interpreting the lease option contract de novo, *see Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 7, 123 N.M. 526, 943 P.2d 560, we agree with the district court.

{17}    The plain language of the parties' agreement demonstrates that the parties entered into a "rental agreement," as defined in Section 47-8-3(P), with an option to purchase. Under Section 47-8-3(P), all agreements between owners and residents "embodying the terms and conditions concerning the use and occupancy of a dwelling unit or premises" are rental agreements—i.e. residential leases. And "[a]n option to purchase is a contract where the property owner, in exchange for valuable consideration, agrees with another person that the latter shall have the privilege of buying property within a specific time on terms and conditions expressed in the option."

---

language we quoted in *Martinez* supports our conclusion here that Section 47-8-10(A) also grants district and magistrate courts concurrent subject matter jurisdiction over UORRA claims. "Subject matter jurisdiction is the authority of the court to hear matters within a general class, while personal jurisdiction is the authority of the court to obligate parties to comply with its orders." *Marchman v. NCNB Tex. Nat'l Bank*, 1995-NMSC-041, ¶ 29, 120 N.M. 74, 898 P.2d 709. Although Section 47-8-10(A) contains language implicating the authority to issue a binding judgment against a party, it also addresses the authority to hear cases of a particular class. That is the import of the statute's reference to "any conduct . . . governed by the [UORRA] or . . . any claim arising from a transaction subject to [it,]" which describes, not who may be bound by a court's judgment, but the type of case that the court may hear.

*Hueschen v. Stalie*, 1982-NMSC-120, ¶ 8, 98 N.M. 696, 652 P.2d 246; *see also Nearburg*, 1997-NMCA-069, ¶ 14 ("An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer." (quoting Restatement (Second) of Contracts § 25 (1981))). Here, the parties' agreement was called a "lease option contract." Under its terms, Plaintiff "agree[d] to lease" and Defendant "agree[d] to rent" the property. The contract was set to expire on September 1, 2019, with automatic renewal for another six months unless Defendant "exercise[d his] option to purchase." Payments under the contract were denominated "rental payments." *See* § 47-8-3(O) (defining "rent," in pertinent part, as payment for "use of a dwelling unit or premises"). Those payments would be "credited to [Defendant] and applied to the purchase price" only "in the event [that Defendant] exercise[d his] option." The option itself is contained in a provision giving Defendant "the exclusive right, option, and privilege" of purchasing the property, a right that the contract provides could be exercised only by paying "the sum of $116,000[] less . . . any sums [that Defendant was] entitled to claim as reimbursement or offset" under the agreement.

**{18}**    It is axiomatic that "[t]here is no sale . . . until [an] option is exercised." *Hueschen*, 1982-NMSC-120, ¶ 8. The district court in essence found that the $10,000 payment was given as consideration for the option, but that the option was never exercised, and therefore concluded that Defendant's "occupancy" of the property occurred at all pertinent times under a rental agreement, rather than "under a contract of sale." Section 47-8-9(B); *cf. Hedicke*, 2003-NMCA-032, ¶¶ 10-15 (indicating in dictum that the district court could properly have treated a $50,000 initial payment as consideration for an option to buy real property). That conclusion was supported by the undisputed evidence. Defendant points to no evidence of any agreement other than the lease option contract pursuant to which he could have entered into a contract of sale by paying Plaintiff $10,000, and he does not contend or refer to anything in the record showing that he ever exercised the option in the lease option contract by paying Plaintiff the sum of $116,000, less payments already made. We therefore affirm the district court's conclusion that the parties entered into a lease agreement subject to the UORRA, rather than a real estate sales contract, and hold that the magistrate court properly exercised its jurisdiction pursuant to Section 47-8-10(A) when it decided Plaintiff's claim for possession.

**{19}**    In arguing that the magistrate court lacked subject matter jurisdiction, Defendant relies, not on any provision of the UORRA, but on NMSA 1978, Section 35-3-3 (2001), which governs the subject matter jurisdiction of magistrate courts over civil actions generally. Section 35-3-3(A) empowers magistrate courts to decide civil actions "in which the debt or sum claimed does not exceed ten thousand dollars." Subsections (C)(3) and (C)(4) provide, respectively, that magistrate courts have "no jurisdiction" over actions "for specific performance of contracts for the sale of real property[,]" § 35-3-3(C)(3), or "in which the title or boundaries of land may be in dispute or drawn into question[.]" Section 35-3-3(C)(4). Defendant argues that these limitations barred the magistrate court from exercising jurisdiction over Plaintiff's claim for possession (1) because the claim "involv[ed] real property" or (2) because the amount involved in this litigation exceeded $10,000.

**{20}** Both arguments are unmoored from the provisions of Section 35-3-3 that Defendant invokes. The first fails because Subsections (C)(3) and (C)(4) neither deny magistrate courts jurisdiction wherever a matter involves real property nor apply on the facts of this case. Subsection (C)(3) plainly does not apply here because Plaintiff's claim was not one for specific performance and because, as explained above, the lease option contract was not a real estate sales contract. Subsection (C)(4) does not apply because Plaintiff's claim for possession did not threaten to change title to the property or the property's boundaries. *See Wood Garage v. Jasper*, 1937-NMSC-019, ¶¶ 9, 12-27, 41 N.M. 289, 67 P.2d 1000 (interpreting, as relevant, a former provision of the New Mexico Constitution that denied justices of the peace and police magistrates jurisdiction over "any matter in which the title to real estate or the boundaries of land may be in dispute or drawn in question" (internal quotation marks and citation omitted)). And Defendant's second argument fares no better. The $10,000 limit imposed by Section 35-3-3(A) did not restrict the magistrate court's authority to consider Plaintiff's claim for possession of the premises, which was not a "claim[]" for a "debt or sum" at all. We therefore conclude that Section 35-3-3 did not deprive the magistrate court of the jurisdiction over Plaintiff's claim for possession granted it under the UORRA.

## II. The District Court Properly Exercised Its Original Jurisdiction Over Plaintiff's Claim for Damages

**{21}** Defendant invokes the same provisions of Section 35-3-3 to argue that the district court lacked subject matter jurisdiction over Plaintiff's claim for damages. The district court ultimately awarded damages over $10,000, and we assume without deciding that the monetary limit that Section 35-3-3(A) imposes on its grant of authority to magistrate courts would have prevented the district court, on de novo appeal, from awarding more than $10,000 in damages. We hold, however, that the district court decided Plaintiff's claim for damages pursuant to its original jurisdiction and therefore conclude that any limits on the district court's de novo appellate jurisdiction did not apply here.

**{22}** A district court may exercise its "original jurisdiction . . . at the same time as its appellate jurisdiction." *Tri-State Generation & Transmission Ass'n v. D'Antonio*, 2011-NMCA-014, ¶ 24, 149 N.M. 386, 249 P.3d 924. Plaintiff's complaint in the magistrate court included a claim for damages, but the magistrate court did not decide that claim. Instead—because Plaintiff requested separate trials on damages and possession—it entered judgment solely on Plaintiff's claim for possession of the premises. That was the only judgment Defendant appealed to the district court, and Plaintiff's claim for possession was consequently the only claim to which the jurisdictional limitations applicable on de novo appeal applied. The magistrate court complaint, which set forth Plaintiff's damages claim, became the operative complaint in the district court upon the filing of the notice of appeal pursuant to Rule 1-072(I) NMRA. To determine whether the district court properly exercised its original jurisdiction over the damages claim, we need not look for an affirmative statutory grant of subject matter jurisdiction. Unlike magistrate courts, our district courts are courts of general jurisdiction; their original jurisdiction extends to "all matters not expressly consigned to other courts[,]" and we presume that

the exercise of that jurisdiction is proper "in the absence of proof to the contrary[.]" *Marchman*, 1995-NMSC-041, ¶ 27. Defendant does not so much as develop an argument to attack the district court's original jurisdiction over Plaintiff's claim for damages, which was unaffected by the fact that that claim was simultaneously pending in the magistrate court. *See Cruz*, 2006-NMCA-109, ¶ 28 (noting that the doctrine of priority jurisdiction "is not jurisdictional in New Mexico"). We therefore conclude that the district court properly exercised its original jurisdiction over that claim.

### III.    The District Court Had Jurisdiction Over Defendant's De Novo Appeal

**{23}**    Before leaving the topic of subject matter jurisdiction, we address, sua sponte, whether the district court had jurisdiction over Defendant's de novo appeal. *See generally Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300 ("[I]t is incumbent upon the appellate court to raise [an issue of subject matter jurisdiction] sua sponte when the [c]ourt notices [one]."). The district court's appellate jurisdiction, like our own, is generally confined to appeals from final judgments. *See* N.M. Const. art. VI, § 27 (1966) ("Appeals shall be allowed in all cases from the final judgments and decisions of . . . inferior courts to the district courts, and in all such appeals, trial shall be had de novo unless otherwise provided by law.");[2] *see also* § 47-8-47(A) (providing that a party that "feels aggrieved by [a] judgment" entered on a claim brought pursuant to the UORRA "may appeal as in other civil actions"); NMSA 1978, § 35-13-1 (1975) ("Any party aggrieved by any judgment rendered or final order issued by the magistrate court in any civil action . . . may appeal to the district court within fifteen days after judgment is rendered or the final order is issued in the magistrate court."); Rule 2-701(B)(1) NMRA (providing that, absent an "express determination that there is no just reason for delay[ing]" the entry of a final judgment, "any order or other form of decision, however designated, which adjudicates fewer than all of the claims [in an action] shall not terminate the action as to any of the claims"). "The general rule in New Mexico for determining the finality of a judgment is that an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 14, 113 N.M. 231, 824 P.2d 1033 (internal quotation marks and citation omitted). Under this construction of the finality rule, the magistrate court's judgment for possession would not be immediately appealable because the magistrate court had yet to decide Plaintiff's claim for damages, and the district court would consequently lack jurisdiction to decide Defendant's de novo appeal.

**{24}**    However, this Court has recognized an exception to the "last act" construction of the finality rule "when the consequences of [an] order that is not the last contemplated order in [a] case are sufficiently severe that the aggrieved party should be granted a right to appeal to alleviate hardship that would otherwise accrue if the appeal were delayed." *State v. Durant*, 2000-NMCA-066, ¶¶ 7-8, 129 N.M. 345, 7 P.3d 495. We conclude that the consequences of a writ of restitution entered pursuant to the UORRA

---

[2]Article VI, Section 27 of the New Mexico Constitution was amended in 2018. It now provides that "[a]ppeals shall be allowed in all cases from the final judgments and decisions of the probate courts and other inferior courts as provided by law." This amendment has no bearing on our analysis.

meet this standard.[3] A resident who is evicted loses what, in many landlord-tenant disputes, is "the essence of the controversy." *Lindsey v. Normet*, 405 U.S. 56, 90 (1972) (Douglas, J., dissenting). Many of the hardships experienced by people who are evicted are self-evident, and the possibility of obtaining a favorable ruling on appeal is small comfort to the resident who has already been forced from hearth and home. Because recognizing an immediate right to appeal enables residents to avoid the drastic consequences of eviction until their appeal is heard, we hold that a writ of restitution entered in a bifurcated proceeding on possession and damages is an appealable final order.

## IV.    The Magistrate Court Lacked Personal Jurisdiction Over Defendant

**{25}**    Defendant renews his argument that he was improperly served in the magistrate court proceeding and that, as a result, that court lacked personal jurisdiction to enter a judgment against him. Plaintiff disagrees and further counters that Defendant could not rely on that defense in the district court because he failed to raise it in the magistrate court. We hold that the magistrate court's judgment was void because it lacked personal jurisdiction over Defendant due to defective service of process, and that Defendant properly raised the service issue on de novo appeal.

**{26}**    The only record evidence of service of process in this case is the return indicating that Defendant was served by posting the summons and petition for restitution "in the most public part of the premises" on January 6, 2017. That method of service plainly failed to comply with Rule 2-202(F)(1), which governed service of process in this case:

> Personal service shall be made . . . upon an individual . . . by delivering a copy of the summons and of the complaint to him personally; or if the defendant refuses to receive such, by leaving same at the location where he has been found; and if the defendant refuses to receive such copies or permit them to be left, such action shall constitute valid service. If the defendant is absent, service may be made by delivering a copy of the process or other papers to be served to some person residing at the usual place of abode of the defendant who is over the age of fifteen (15) years; and if there is no such person available or willing to accept delivery, then service may be made by posting such copies in the most public part of the defendant's premises, and by mailing to the defendant at his last known mailing address copies of the process[.]

*See also* § 47-8-43(A) ("The summons may be served pursuant to the New Mexico rules of civil procedure and returned as in other cases."). The plain language of the Rule demonstrates that, absent delivery to the defendant, a refusal by the defendant to accept service, or delivery to some person over the age of fifteen residing at the defendant's abode, personal service may be made only by "posting . . . in the most

---

[3]We express no opinion as to whether it is proper for the court in a proceeding involving bifurcated claims for possession and damages to issue a writ of restitution prior to the entry of judgment on all claims.

public part of the defendant's premises, *and* by mailing to the defendant at his last known mailing address copies of the process." Rule 2-202(F)(1) (emphasis added). Thus, unless service is effected by both posting and mailing, it fails to comply with the Rule.

**{27}** "A court has no power to bind a party to a judgment when that party has not been properly served with process." *Edmonds v. Martinez*, 2009-NMCA-072, ¶ 9, 146 N.M. 753, 215 P.3d 62; *see also Trujillo v. Goodwin*, 2005-NMCA-095, ¶ 8, 138 N.M. 48, 116 P.3d 839 ("It is well established in our cases that a court lacks jurisdiction to pronounce judgment over a defendant or respondent unless that defendant or respondent has been properly summoned into court."). Because the record demonstrates that Defendant was never properly served in the magistrate court proceeding, we hold that the magistrate court never obtained personal jurisdiction over Defendant and that its judgment was void.[4]

**{28}** The district court concluded that service was proper under Rule 1-004(J), pursuant to which a "court may order service by any method or combination of methods . . . reasonably calculated under all of the circumstances" to give the defendant notice "[u]pon motion, without notice, and showing by affidavit that service cannot reasonably be made as provided by [the] [R]ule[.]" Rule 1-004 has no bearing on this case. The district court erred in looking to the Rules of Civil Procedure for the District Courts to determine whether Plaintiff properly served Defendant in the magistrate court. *See* Rule 1-001(A) NMRA (providing that the Rules of Civil Procedure for the District Courts "govern the procedure in the district courts of New Mexico"). The Rules of Civil Procedure for the Magistrate Courts "govern the civil procedure in all magistrate courts[,]" Rule 2-101(A) NMRA, and unlike the district court rules, they do not appear to vest the courts they govern with the authority to "order service by any method or combination of methods . . . reasonably calculated[,]" Rule 1-004(J), to give the defendant notice.

**{29}** Even if we assume that Rule 1-004 did apply, the district court erred by concluding that service was proper. Rule 1-004 authorizes alternative service—service "reasonably calculated" to give notice—only when *a court* has determined *in advance*, "[u]pon motion . . . and showing by affidavit that service cannot reasonably be made" in the manner ordinarily contemplated by the Rule. The record contains no motion for

---

[4]Because the lack of personal jurisdiction rendered the magistrate court's judgment void, we need not decide the effect of the magistrate court's error in holding trial only three days after this deficient service was effected. *Compare Wilson v. Denver*, 1998-NMSC-016, ¶ 9, 125 N.M. 308, 961 P.2d 153 ("[T]ime limitations contained in statutes which establish a condition precedent to the right to maintain the action are jurisdictional and not subject to waiver." (internal quotation marks and citation omitted)), *with Green Valley Mobile Home Park v. Mulvaney*, 1996-NMSC-037, ¶ 1 n.1, 121 N.M. 817, 918 P.2d 1317 (holding that the absence of a statement of good cause in a notice to quit issued pursuant to the Mobile Home Parks Act was an "essential element of a statutory cause of action, a mandatory precondition to a claim for relief, or a condition precedent that must be performed before the owner's right of restitution accrues," rather than an issue of subject matter jurisdiction (internal quotation marks and citations omitted)). *See generally* 52B C.J.S. *Landlord & Tenant* § 1535 (2020) (explaining that "[j]urisdiction in summary proceedings for the recovery of premises from a tenant is exclusively statutory" and that "[t]he methods prescribed by statute for obtaining and exercising jurisdiction ordinarily must be strictly pursued").

alternative service or affidavit showing that the ordinary service requirements could not be complied with, much less an order authorizing such alternative service before process was delivered. Instead, it appears that Plaintiff himself made the call to serve Defendant by posting only. That will not do. As Defendant rightly notes, Plaintiff could not "unilaterally decide . . . the legal requirements for service of process." And the district court could not enable him to do so after the fact; the Rule rejects the maxim that it is better to ask for forgiveness than permission.[5]

{30}    This brings us to Plaintiff's fallback position on appeal: that, even assuming service of process in the magistrate court was improper, Defendant waived his right to challenge service by filing a de novo appeal before raising the issue in the magistrate court. We are not persuaded. "Waiver is the intentional relinquishment of a known right." *Ortiz*, 2008-NMCA-136, ¶ 19 (internal quotation marks and citation omitted). We do not believe that Defendant's immediate appeal of the default judgment can reasonably be construed as the intentional relinquishment of his right to be properly served when the first action Defendant took in the district court was to challenge the magistrate court's jurisdiction to enter judgment against him. *Cf. Abarca v. Henry L. Hansen, Inc.*, 1987-NMCA-068, ¶ 9, 106 N.M. 25, 738 P.2d 519 (rejecting, on due process grounds, the proposition that the entry of a general appearance after a default judgment constitutes a waiver of an objection to deficient service).

{31}    We think that the thrust of Plaintiff's argument is not that Defendant waived the issue of service, but that he failed to preserve it. Plaintiff relies on *State v. Hoffman*, where this Court held that a defendant could not raise the applicability of the metropolitan court six-month rule for the first time on de novo appeal following his conviction in the metropolitan court. 1992-NMCA-098, ¶ 7, 114 N.M. 445, 839 P.2d 1333. Because we used the terms "preservation" and "waiver" interchangeably in reaching that holding, *see id.* ¶¶ 1, 5, 7, we understand Plaintiff's argument to be that Defendant could not properly raise the issue of service of process for the first time on direct appeal to the district court and address it accordingly.

{32}    It is a venerable rule, with a history predating New Mexican statehood, that a court sitting in an appellate capacity will not review an issue raised for the first time on appeal. *See generally Fullen v. Fullen*, 1915-NMSC-091, ¶¶ 10-14, 21 N.M. 212, 153 P.

---

[5]After trial, the district court concluded that "[D]efendant and residents of the . . . property avoided service." The record does not support that conclusion. Plaintiff put on no evidence that any resident of the property had refused to receive *the summons and petition*. The only evidence regarding service of those documents was the return itself, which indicates that service had been made only through posting. Plaintiff did present a process server's testimony that an unidentified woman on the premises had refused to accept the three-day notice of nonpayment of rent required by Section 47-8-33(D). Even assuming that service of process by posting only would be proper upon an unidentified person's refusal to be served, *but see* Rule 2-202(F)(1) (allowing service by posting only "if *the defendant* refuses to [be served]" (emphasis added)), this testimony had no bearing on whether service of the summons and complaint was proper. The notice does not mention a legal proceeding, let alone the time and place where Defendant could appear to put on a defense. *Cf.* Rule 2-202(B)(1) (providing that a summons "must contain[,]" among other things, "the name of the court in which the action is brought, the name of the county in which the complaint is filed, [and] the docket number of the case"). Thus, service of the notice of nonpayment in this case was not equivalent to service of process.

294.[6] We nevertheless conclude that under the circumstance of this case it was proper for Defendant to make his initial challenge to service of process on de novo appeal. District courts sitting in their de novo appellate capacity are not "limited to reviewing the record made on [an] issue in the [inferior] court" and thus do not, strictly speaking, "sit[] as an appellate court." *Hoffman*, 1992-NMCA-098, ¶ 7. Instead, in exercising their de novo appellate jurisdiction, district courts have no greater jurisdiction than the inferior court that issued the judgment or order appealed from. *See Wood Garage*, 1937-NMSC-019, ¶ 7 ("If it was the district court's duty to cease all further proceedings because of lack of jurisdiction, [the court] could not properly render judgment on the merits of the issue."); *Geren & Hamond v. Lawson*, 1919-NMSC-048, ¶ 3, 25 N.M. 415, 184 P. 216 ("[W]here a case is begun in the justice court, and an appeal taken to the district court, if the justice has no jurisdiction, there is nothing to try de novo, and the case, on proper motion, should be dismissed."). Thus, Defendant's attack on service of process in the magistrate court proceeding was, in effect, an attack on the *district court's* derivative personal jurisdiction on de novo appeal. We hold that the issue was properly raised for the first time in the district court.

**{33}** For these reasons, we reverse the district court's affirmance of the magistrate court's judgment for possession and direct the district court to dismiss Plaintiff's claim for possession for lack of personal jurisdiction.

## V. The District Court Erred in Concluding That the UORRA Permitted Plaintiff to Withhold Defendant's Left-Behind Property

**{34}** We turn now to the issue Defendant has pressed since the outset of his involvement in this litigation: whether the UORRA permits owners to withhold left-behind personal property for payment of delinquent rent and damages after a resident has demanded its return within three days following the execution of a writ of restitution.[7] At

---

6We are unaware of any current provision of the magistrate or district court rules requiring a party to invoke a magistrate court's ruling on an issue as a prerequisite to obtaining review of that issue on de novo appeal in district court. *Cf.* Rule 1-046 NMRA (setting forth the manner in which an issue may be preserved in the district court); Rule 1-073(O) NMRA (requiring preservation in on-record appeals from the metropolitan court); Rule 12-321(A) NMRA (requiring preservation of issues for them to be considered by this Court or our Supreme Court). Although there are indications in case law that the preservation requirement applies in the context of a de novo appeal, *see, e.g.*, *City of Farmington v. Piñon-Garcia*, 2013-NMSC-046, ¶ 12, 311 P.3d 446, none of that case law arose in the specific context of a challenge to service following the entry and execution of a judgment for possession entered without the defendant's participation.

7On this issue, as before, "we are not aided by the fact that the UORRA is a 'Uniform' act." *Casa* Blanca *Mobile Home Park v. Hill*, 1998-NMCA-094, ¶ 6, 125 N.M. 465, 963 P.2d 542. "Although based on the Uniform Residential Landlord and Tenant Act (URLTA) approved by the National Conference of Commissioners on Uniform State Laws in 1972, the UORRA has a number of unique provisions." *Id.* Section 47-8-34.1, enacted in 1995, is one of them. The 1972 URLTA did not address the disposition of left-behind personal property. Although the 2015 Revised URLTA has a model statute roughly corresponding to Section 47-8-34.1, textual differences between that section and our own dissuade us from looking to the updated uniform act as an interpretive aid. *See* Revised Unif. Residential Landlord & Tenant Act § 1001(i) (Nat'l Conference of Comm'rs on Unif. State Laws 2015) (providing that "[a] landlord that recovers possession of a dwelling unit under a court order is not required to comply with this section"). And, while several other states have statutes that specifically address the disposition of left-

the outset, we acknowledge that this issue is moot. *See Cobb v. Gammon*, 2017-NMCA-022, ¶ 13, 389 P.3d 1058 ("An issue is moot when no actual controversy exists, and the court cannot grant actual relief."). Because the magistrate court's lack of personal jurisdiction rendered the judgment that led to Defendant's eviction void, our determination of whether the UORRA would have permitted Plaintiff to withhold Defendant's property, had it lawfully come into Plaintiff's possession, would do nothing to resolve the controversy between the parties. Although this Court will generally not decide moot issues, *e.g. State ex rel. Dep't of Pub. Safety v. One 1990 Chevrolet Pickup*, 1993-NMCA-068, ¶ 17, 115 N.M. 644, 857 P.2d 44, it may do so as a matter of discretion when an issue is "of substantial public interest" or "capable of repetition yet evading review." *Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶¶ 9-10, 288 P.3d 902 (internal quotation marks and citation omitted). Given the prevalence of rental agreements governed by the UORRA throughout our state, we conclude that the first exception applies in this case and accordingly turn to the merits. *See City of Albuquerque v. Brooks*, 1992-NMSC-069, ¶¶ 2, 8, 114 N.M. 572, 844 P.2d 822 (addressing the moot issue of "whether the [UORRA] requires restitution if the court finds that the tenant is in default on rent[,]" in part because the question was "of public interest and importance").

**{35}** We hold that the UORRA requires owners to provide residents with a reasonable opportunity to recover left-behind personal property as a matter of right, upon payment of reasonable moving and storage fees if sought by the owner, within three days of the execution of a writ of restitution or at a later agreed-to date. An owner who refuses to provide an evicted resident with reasonable access to the property during that time is liable to the resident under principles governing a wrongful refusal to return another's property at common law. *See* § 47-8-6(B) ("Any right or obligation declared by the [UORRA] is enforceable by action unless the provision declaring it specifies a different and limited effect."); § 47-8-4 ("Unless displaced by the provisions of the [UORRA], the principles of law and equity . . . supplement its provisions."); *see also Mason v. Schumacher*, 439 N.W.2d 61, 70-71 (Neb. 1989) (relying on Nebraska's equivalent to Section 47-8-4 to conclude that, "[i]n the absence of a statute concerning disposition of a tenant's personal property left on residential premises previously leased, the respective rights of landlord and tenant are determined by the common law governing the tort of conversion"). *See generally Nosker v. Trinity Land Co.*, 1988-NMCA-035, ¶ 15, 107 N.M. 333, 757 P.2d 803 (discussing the tort of conversion by demand and refusal).

## A.    Left-Behind Personal Property Under Section 47-8-34.1

**{36}** The UORRA governs the disposition of left-behind personal property in Section 47-8-34.1, under which the rights and obligations of owner and resident vary depending

---

behind property following court-ordered eviction, we are aware of none sufficiently similar to Section 47-8-34.1 to be of use here. *See, e.g.*, Ark. Code Ann. § 18-16-507(c) (West 2009); Kan. Stat. Ann. § 58-2565(d) (West 2000); Neb. Rev. Stat. Ann. §§ 69-2301 to -2314 (West 1991, as amended through 2019) (Disposition of Personal Property Landlord and Tenant Act); Tex. Prop. Code Ann. § 24.0061(d) (West 2015); Vt. Stat. Ann. tit. 12, § 4854(a) (West 2015); Wash. Rev. Code Ann. § 59.18.312 (West 2011).

on how the owner regains possession of the rental premises.[8] Subsection (A) of the statute governs where a rental agreement terminates by abandonment. *See* § 47-8-3(A) (defining "abandonment" as a resident's absence from the rental property without notice for a period "in excess of seven continuous days" once rent is delinquent); § 47-8-34(C) (providing that an owner may take "immediate possession of the dwelling unit" upon abandonment). When that is the case, the owner "shall store all personal property of the resident left on the premises for not less than thirty days[,]" § 47-8-34.1(A)(1), and must give the resident written thirty-day "notice [of] the owner's intent to dispose of the personal property." Section 47-8-34.1(A)(2). The owner may not "dispose of" the property if the resident "claim[s] or make[s] attempt to retrieve the stored personal property" before the disposition date. Section 47-8-34.1(A)(6). In the interim, the resident "may contact the owner to retrieve the property at any time," § 47-8-34.1(A)(4), and the owner must provide "reasonable access and adequate opportunities . . . to retrieve all of the property stored." Section 47-8-34.1(A)(5).

{37}    Subsection (B) applies where an owner regains possession through the resident's "voluntary surrender" of the rental property. Though less detailed than the storage and recovery provisions in Subsection (A), Subsection (B)'s parallel provisions are along the same lines. Under Subsection (B), an owner "shall store any personal property on the premises for a minimum of fourteen days from the date of surrender of the premises" and "provide reasonable access to the resident for the purpose of the resident obtaining possession of the personal property stored." The owner "may dispose of the stored personal property" only if the resident does not "retrieve[]" it within the fourteen-day window. *Id.*

{38}    The provision at issue in this case, Subsection (C), governs where an owner regains possession of the rental property by writ of restitution—i.e. court-ordered eviction. *See* § 47-8-3(G) (defining "eviction" as "any action initiated by the owner to regain possession of a dwelling unit and use of the premises under terms of the [UORRA]"); § 47-8-40 (establishing grounds on which an owner may bring an action for possession); § 47-8-42 (providing that a "person seeking possession shall file a petition for restitution"); § 47-8-46(A) (providing that, where the court enters "judgment . . . for restitution of the premises" in the owner's favor, "the court shall declare the forfeiture of the rental agreement and . . . [upon] request . . . issue a writ of restitution directing the sheriff to restore possession of the premises to the [owner] on a specified date not less than three nor more than seven days after entry of judgment"). Compared to Subsections (A) and (B), Subsection (C) is barebones. It provides only that an owner has "no obligation to store any personal property left on the premises after three days following execution of writ of restitution" unless otherwise agreed. Section 47-8-34.1(C). "The owner may thereafter dispose of the personal property in any manner without further notice or liability." *Id.*

{39}    The remaining provisions of Section 47-8-34.1 specify the manner in which owners may "dispose of" left-behind property and the conditions owners may place on

---

[8]A different statute, Section 47-8-34.2, governs in the event of a resident's death during the term of a rental agreement.

its return. An owner "has the right to dispose of" left-behind property "in any manner" if it is worth one hundred dollars or less. Section 47-8-34.1(D). If it is worth more, the owner may either sell the property and give the resident any proceeds "in excess of money due and owing to the owner" or "retain the property for his own use or the use of others," crediting the resident with the property's fair market value and likewise giving the resident any excess. Section 47-8-34.1(E). Owners may "require payment" of "reasonable storage fees . . . and the prevailing rate of moving fees" "prior to the release of the property," but they may not "hold the property for any other debts claimed due or [owing,]" or for payment of "judgments" unless "application for a writ of execution has . . . previously been filed." Section 47-8-34.1(G)-(H). *See generally* Rules 1-065.1 NMRA (setting forth procedure for the issuance of a writ of execution in district court); 2-801 NMRA (same, for magistrate court); 4-805A NMRA (form for application for writ of execution in magistrate court).

**B.     Section 47-8-34.1 Requires Owners to Return Left-Behind Personal Property Upon Demand and Payment of Reasonable Storage and Moving Costs**

**{40}**     We must determine whether Section 47-8-34.1(C) requires owners to provide residents with an opportunity to retrieve their left-behind property within three days following the execution of a writ of restitution. Our goal is "to ascertain and give effect to the intent of the Legislature." *State v. Holt*, 2016-NMSC-011, ¶ 10, 368 P.3d 409 (internal quotation marks and citation omitted). We begin by examining the plain language of the statute before us, *N.M. Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n*, 2007-NMSC-053, ¶ 21, 142 N.M. 533, 168 P.3d 105, but that inquiry is a short one here. Subsection (C) provides only that owners have "no obligation to store" left-behind property "after three days following [the] execution of [a] writ of restitution" and that they may thereafter "dispose of" the property "in any manner without further notice or liability." The plain language does not address whether a resident has a right to retrieve or whether an owner has a corresponding obligation to provide reasonable access to left-behind property.

**{41}**     The Legislature's silence on the question "expresses no intention one way or the other." *Leyba v. Renger*, 1992-NMSC-061, ¶ 9, 114 N.M. 686, 845 P.2d 780. Because the statutory language is unclear, we must consider the overall structure of Section 47-8-34.1, *State v. Hertzog*, 2020-NMCA-031, ¶ 12, 464 P.3d 1090, "read[ing] the statute in its entirety and constru[ing] each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350. Thus, we read what Subsection (C) does say "in reference to [Section 47-8-34.1] as a whole[,]" rather than "in a vacuum." *Miller v. Bank of Am., N.A.*, 2015-NMSC-022, ¶ 12, 352 P.3d 1162.

**{42}**     While Subsection (C) makes no mention of a resident's right to retrieve, we agree with both parties that its plain language implicitly imposes an obligation to store left-behind property for three days following the execution of a writ of restitution. Had the Legislature intended to relieve owners of any obligation to store, the words "after three

days following execution of writ of restitution" would be superfluous; the Legislature could readily have achieved that goal by declaring simply that owners have "no obligation to store." *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 24, 309 P.3d 1047 (recognizing that our appellate courts "interpret a statute so as to avoid rendering the Legislature's language superfluous"). And it is only after the point at which an owner is specifically exempted from an obligation to store that the owner may "dispose of the personal property in any manner without further notice or liability." Section 47-8-34.1(C). If owners can only "dispose of" left-behind property after three days have passed, then they are obligated to store it until then. The obligation to store arises by straightforward inference from the prior inability to "dispose of"—i.e. conclusively deal with—the property without liability during the three-day period. *Dispose*, *Merriam-Webster Dictionary*, https://www.merriamwebster.com/dictionary/dispose (last visited Nov. 20, 2020).[9]

**{43}** The structure of Section 47-8-34.1 demonstrates that the Legislature intended the resident's right to retrieve to be part and parcel of this implicit obligation. Subsections (A) and (B) each require owners to "store" property and prohibit owners from "dispos[ing] of" the property until the obligation to store created by each statute ends. Under Subsection (A), owners must "provide reasonable access and adequate opportunities for the resident to retrieve all of the property stored prior to any disposition[.]" Section 47-8-34.1(A)(5). Similarly, Subsection (B) requires owners to "provide reasonable access to the resident for the purpose of the resident obtaining possession of the personal property stored." The entire purpose of the obligation to store created by both statutory provisions is to provide residents with a legislatively determined reasonable period of time to retrieve left-behind property. And nothing in Subsection (C) indicates that the Legislature intended the obligation to store created by that statute to deviate from this pattern by serving some other unidentified purpose. As we have explained, Subsection (C) implicitly creates an obligation to store, but its text provides only that there is "no obligation to store" after three days without explaining the

---

9The structure of Section 47-8-34.1 suggests that the Legislature intended that this or a similarly broad meaning apply to the phrase "dispose of" in Section 47-8-34.1(C). Subsections (A) and (B) enable owners to "dispose of" left-behind property at a specified point in time after the owner regains possession of the rental premises. And, read in context, Section 47-8-34.1(E) provides that an owner may "dispose of" left-behind property worth more than $100 by "sell[ing]" or "retain[ing]" it. *Compare, e.g.*, § 47-8-34.1(E)(2) (providing that, where the property is worth more than $100, the owner may "retain the property for his own use or the use of others"), *with* § 47-8-34.1(D) ("Where the property has a market value of less than one hundred dollars ($100), the owner has the right to dispose of the property in any manner."). Although Subsection (C) appears to give owners far broader latitude in *how* they dispose of personal property than do Subsections (A) and (B), *see* § 47-8-34.1(C) (providing that an owner may dispose of left-behind property "in any manner"), nothing indicates that the Legislature intended the basic phrase "dispose of" to have different meanings across the statutes. Other, more specific definitions that readily spring to mind in the context of "disposing of" personal property—"transfer[ring it] to the control of another," for example, or "get[ing] rid of" it, *Dispose*, *Merriam-Webster Dictionary*, https://www.merriamwebster.com/dictionary/dispose (last visited Nov. 20, 2020)—are therefore a poor fit. *See State v. Cleve*, 1999-NMSC-017, ¶ 12, 127 N.M. 240, 980 P.2d 23 (presuming that the Legislature intended a phrase to have the same meaning "between different subsections of the same statute and within a single subsection"); *cf. JW, LLC v. Ayer*, 2014 VT 71, ¶ 15, 197 Vt. 118, 101 A.3d 906 (noting that "[t]he phrase 'dispose of' . . . is used to signify any number of methods for dealing with property" and looking to related statutes to determine its meaning in a particular context).

purpose of the obligation to store that applies during that time. Thus, the most natural reading of that language is as a limitation on the duration of an obligation to store described elsewhere.

**{44}** Subsection (C) immediately follows the only provisions in Section 47-8-34.1 that expressly create an obligation to store, and it therefore stands to reason that the Legislature intended the nature of the obligation in Subsection (C) to be determined by reference to those statutes. Because the resident's right to retrieve is part and parcel of the obligation of an owner to store created by Subsections (A) and (B), interpreting Subsection (C) to provide for a right of retrieval harmonizes the three subsections. *See Key*, 1996-NMSC-038, ¶ 14. We therefore hold that Section 47-8-34.1(C) implicitly affords residents a right to retrieve their left-behind property for three days following the execution of a writ of restitution.

**{45}** Plaintiff argues that the explicit references to a right of retrieval in Subsections (A) and (B) should weigh *against* finding a similar right in Subsection (C) because the Legislature "specifically omitted" language creating one. *See, e.g., State v. Jade G.*, 2007-NMSC-010, ¶ 28, 141 N.M. 284, 154 P.3d 659 ("[W]hen the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional."); *State ex rel. State Eng'r v. Lewis*, 1996-NMCA-019, ¶ 10, 121 N.M. 323, 910 P.2d 957 ("[T]he Court will read the requirements of one portion of a statute into the requirements of another portion only where there is no plausible reason for the difference under the two statutory provisions."). But the presumption Plaintiff invokes is only a presumption and can be rebutted if other characteristics of the statute under consideration reveal that the Legislature intended the contrary. *See, e.g., Barela v. Midcon of N.M., Inc.*, 1989-NMCA-093, ¶¶ 16-21, 109 N.M. 360, 785 P.2d 271. As we have explained, the only purpose for requiring owners to store left-behind property that can be ascertained from any provision of Section 47-8-34.1 is to provide residents with an opportunity to recover possession of their left-behind property, and understanding the resident's right to retrieve to be an integral part of the obligation to store under Subsection (C) harmonizes the statute's provisions. We think it implausible that the Legislature intended—through silence, no less—to make the obligation to store created by Subsection (C) fundamentally different than the obligation created by the parallel provisions of Subsections (A) and (B).

**{46}** Moreover, application of the presumption Plaintiff invokes runs headlong into another presumption in this case: the presumption that the "[L]egislature does not intend to enact useless statutes[.]" *City of Albuquerque v. State Mun. Boundary Comm'n*, 2002-NMCA-024, ¶ 11, 131 N.M. 665, 41 P.3d 933. Under Plaintiff's interpretation, owners would be able to choose whether to return or withhold a resident's property until they could dispose of it by, among other things, selling or retaining it. But the Legislature presumptively intended Subsection (C) to serve *some* purpose, and the statute would accomplish nothing in *preventing* owners from disposing of left-behind property for three days if owners could choose to hold the property until they could dispose of it. The only conceivable purpose that the statute could achieve under Plaintiff's interpretation would

be to benefit the owner at the end of the owner's three-day storage obligation, and even that would be an imperfect fit, since the owner would benefit equally from the ability to dispose of left-behind property right away, and without the burden of protecting a renter's property from the array of adverse consequences to which unstored property is exposed.

**{47}** Plaintiff has not persuaded us that the text or structure of Section 47-8-34.1 supports this unlikely result. Plaintiff argues that Subsection (C) allows owners to withhold left-behind property when an owner regains possession through a writ of restitution because Subsections (D) and (E) "expressly" give owners "the right to retain and dispose of the tenant's left[-]behind personal property, and to apply the value to any debt owed by the tenant or to mail any money in excess of the debt to the tenant." But Subsections (D) and (E) say *how* an owner may "dispose of" left-behind property, and Subsection (C) provides that owners may "dispose of" left-behind property only "[]after" they satisfy their obligation to store the property for three days. Even assuming that Subsections (D) and (E) apply where an owner regains possession of a rental property through the execution of a writ of restitution,[10] there is no textual basis whatsoever for concluding that, in that circumstance, they enable an owner to withhold property from a resident until the day the owner can dispose of it.

**{48}** In the alternative, Plaintiff contends that Subsection (C) permits owners to withhold property for the purpose of "coming to an agreement regarding [its] return . . . based on a payment of past[-]due rent and other damages[.]" Yet this contention cannot be squared with the plain language of Subsections (G) and (H), which, on their face, apply regardless of which subsection of Section 47-8-34.1 gives rise to an owner's obligation to store. Although Subsection (G) enables owners to "require payment" of "reasonable storage fees . . . and the prevailing rate of moving fees" "prior to the release of the property," Subsection (H) expressly prohibits them from holding left-behind property for "any other debts claimed due or [owing.]" Absent any indication that the Legislature intended the words "any other debts claimed due or [owing]" to have other than their ordinary meaning, we ascribe to that phrase the broad meaning suggested by the word "any" and construe it to encompass the payment of rent and other damages claimed by the owner of a rental property.

## VI.     Damages and Attorney Fees

**{49}** Finally, we address the district court's award of damages and attorney fees to Plaintiff. We affirm the damages award in part and vacate it in part, vacate the district court's award of attorney fees, and remand for further consideration in light of this opinion.

---

10*But see Baker*, 2013-NMSC-043, ¶ 24. *Compare* § 47-8-34.1(C) (providing that an owner may dispose of left-behind personal property "in any manner" in cases involving an executed writ of restitution), *with* § 47-8-34.1(D) (providing that an owner may dispose of left-behind property "in any manner" where it has a market value of less than one hundred dollars).

## A.  Plaintiff Was Entitled to Recover Damages for Property Damage and Unpaid Rent

**{50}**     Relying on *Huckins v. Ritter*, 1983-NMSC-033, 99 N.M. 560, 661 P.2d 52, and *Buckingham v. Ryan*, 1998-NMCA-012, 124 N.M. 498, 953 P.2d 33, Defendant argues that Plaintiff should have been barred from recovering damages and rent at all because Plaintiff retained Defendant's initial $10,000 payment.[11] *Huckins* held that, under certain circumstances, equity requires that a down payment be returned to the purchaser under a real estate sales contract upon default.[12] *Huckins*, 1983-NMSC-033, ¶¶ 5-7. *Buckingham* recognized that principle, 1998-NMCA-012, ¶ 7, and separately applied the rule that, under the doctrine of election of remedies, a seller may not both retain amounts paid pursuant to a liquidated damages provision[13] and seek damages for breach of contract, *see id.* ¶¶ 17-22. Neither case supports reversal here.

**{51}**     Assuming for the sake of argument that the analyses set forth in *Buckingham* and *Huckins* would apply if Plaintiff had retained the $10,000 payment, *see generally* § 47-8-45 (providing that a defendant "may . . . assert any legal or equitable defense, setoff or counterclaim" in an action brought under the UORRA), that is not what happened in this case. The district court *credited* Defendant with the $10,000 payment in calculating Plaintiff's damages, in effect ruling that Plaintiff was not entitled to retain the payment.[14] We therefore hold that the district court did not err in determining that Plaintiff was entitled to damages for past-due rent and property damage.

## B.  Credit for Repairs and Materials

**{52}**     Next, Defendant argues that the district court erred by not crediting him with the full value of the repairs he made to the property during his occupancy. The district court declined to credit Defendant with any repairs other than those Defendant made to the property's roof, justifying that decision on the ground that Defendant "provided insufficient evidence concerning [other] repairs made to the home . . . and provided no receipts for material."[15] Although the basis for the district court's conclusion is not

---

[11]Defendant's briefs appear to assert that *Huckins* or *Buckingham* apply here because it would be inequitable for Plaintiff to sell Defendant's left-behind property *on top of* recovering damages *and* retaining the $10,000 down payment. Because the district court's order contemplated that any money obtained from the sale of the property would be credited toward Plaintiff's damages, we read Defendant's briefs to assert a challenge to the damages award itself.

[12]Our Supreme Court has held that the UORRA, through Section 47-8-12, grants broader equitable discretion than *Huckins* contemplates, allowing courts to "selective[ly] enforce[] . . . the contract to bring about an equitable result" by considering the "underlying fairness of [a] rental agreement when made." *Ramirez-Eames v. Hover*, 1989-NMSC-038, ¶ 7, 108 N.M. 520, 775 P.2d 722.

[13]The lease option contract in this case provides that, "[s]hould [Defendant] default . . . , [Plaintiff] shall keep all monies paid as liquidated damages."

[14]At no point has Defendant sought the return of the $10,000. Thus, although our holding on the issue of Defendant's left-behind property may result in a damages award to Plaintiff of less than $10,000 on remand, we need not decide whether *Huckins* or *Buckingham* would provide a basis for Defendant to seek the return of the payment itself.

[15]The parties both discuss a provision of the lease option contract that Plaintiff asserts restricted Defendant's right to obtain credit for additional improvements. The contract provides that Defendant "shall

perfectly clear, the phrasing of its order suggests that it concluded that the evidence was insufficient as a matter of law to establish that Defendant had made additional repairs to the property and the value of those repairs. We therefore review the district court's ruling by asking whether Defendant presented substantial evidence of additional repairs and their value. *See Jones v. Auge*, 2015-NMCA-016, ¶ 48, 344 P.3d 989. "Substantial evidence is that which a reasonable mind accepts as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

**{53}** We conclude that Defendant presented substantial evidence of additional repairs and their value. At trial, Defendant and his wife testified about various expenses they had incurred in making some of the repairs to the property that Defendant sought to offset against Plaintiff's damages. For example, Defendant testified, among other things, that he spent $700 in repairing outdoor faucets that had burst, and Defendant's wife testified that she spent roughly $200 to replace a fuse box on the property. That testimony constituted substantial evidence of those repairs and their value, and we therefore conclude that the district court erred to the extent that it determined that Defendant's evidence was insufficient evidence of other repairs as a matter of law. Nothing in this opinion precludes the district court from rejecting, on a different basis, Defendant's claim for credit.[16]

## C.    Attorney Fees

**{54}** Defendant's final argument is that the district court erred in awarding Plaintiff attorney fees based on its conclusion that Section 47-8-34.1 permitted Plaintiff to withhold and sell Defendant's personal property. We review a trial court's award of attorney fees for an abuse of discretion. *Hedicke*, 2003-NMCA-032, ¶ 23. Although we do not go so far as to reach Defendant's requested holding—that he, rather than Plaintiff, should be awarded attorney fees—we vacate the district court's award of

---

be responsible for all maintenance and repair upon [the p]roperty" and explicitly requires Defendant to "pay the costs of [any] improvements[.]" *Cf. Cruzan v. Franklin Stores Corp.*, 1963-NMSC-056, ¶ 8, 72 N.M. 42, 380 P.2d 190 ("A tenant may not use the value of improvements which he has expressly agreed belong to the landlord as an offset against his liability for breach of his covenant to repair and surrender in good condition."). *See generally* § 47-8-20(C) (providing that "[t]he owner and resident of a single family residence may agree that the resident perform [certain of] the owner's duties . . . and also specified repairs, maintenance tasks, alterations and remodeling, but only if the transaction is in writing, for consideration, entered into in good faith and not for the purpose of evading the obligations of the owner"). The district court did not mention that provision in determining that Defendant was not entitled to additional credit, and the court's determination that Defendant was entitled to offset at least some of the repairs that he made suggests that the court did not rely on it. The district court may well have determined that strictly applying the contract's provisions to preclude credit would be inequitable. However, the court's order gives us no basis for reaching that conclusion, and we are poorly positioned to determine in the first instance the factual issues involved in ascertaining "the underlying fairness of the rental agreement when made." *Ramirez-Eames*, 1989-NMSC-038, ¶ 7. We therefore leave this issue for the district court to resolve on remand.

16Because neither party explains the legal or equitable basis for the district court's award of credit, we express no opinion as to whether the district court had the authority to award Defendant credit for repairs in the first place.

attorney fees and remand for further consideration of the parties' prevailing-party status in light of this opinion.

**{55}** Under Section 47-8-48(A), "the prevailing party" in a "suit . . . to enforce the terms and conditions of [a] rental agreement or to enforce any provisions of the [UORRA]" "shall be entitled to reasonable attorney[] fees and court costs to be assessed by the court." "[A]t the end of the entire action, the prevailing party is the party [that] wins on the merits or on the main issue of the case." *Hedicke*, 2003-NMCA-032, ¶ 26; *see also Marchman*, 1995-NMSC-041, ¶ 66 ("The prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." (internal quotation marks and citation omitted)). "[A]ssessing reasonable attorney fees need not be mechanistic or formulaic, but is governed by, and should be apportioned according to, the facts and circumstances of the case and the extent to which the parties, in fact, prevailed." *Hedicke*, 2003-NMCA-032, ¶ 30. Accordingly, in a suit involving multiple claims, "if each party prevails on [some] claim[s] and loses on [others], the trial court . . . may conclude that neither is ultimately a prevailing party[.]" *Id.* ¶ 28.

**{56}** In the posture that this case reached this Court, Plaintiff was the prevailing party on his claims for possession of the premises, rent, and property damage, and on Defendant's counterclaims for conversion and return of the property. We have reversed the district court's ruling on the possession claim—a ruling that implicitly revives Defendant's claim for conversion—and it is possible that, after further proceedings on remand, Plaintiff will no longer be the "prevailing party" on all claims. Because "the extent to which [each of] the parties, in fact, prevailed[,]" *id.* ¶ 30, may change, we vacate the fee award and remand for additional consideration.

**CONCLUSION**

**{57}** We reverse the district court's affirmance of the magistrate court's judgment for possession in favor of Plaintiff, vacate the court's judgment on Defendant's counterclaims for possession of his personal property and conversion, vacate the district court's award of damages and attorney fees to Plaintiff, and remand this case to the district court for further proceedings consistent with this opinion.

**{58}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**